MYERS, J.,
for the Court.
¶ 1. On July 6, 2002, at approximately 4:00 in the morning, Billy McCamey and Charles Hodnett were arrested in the Wal-Mart parking lot, located in Columbus, Mississippi. McCamey and Hodnett were arrested for purchasing and having possession of more than two precursor chemicals used in the manufacture of methamphetamine, in violation of Mississippi Code Annotated § 41-29-313 (Rev. 2001). The precursor chemicals in their possession included ether, ephedrine, and lithium. On December 8-9, 2003, McCam-ey was tried in the Circuit Court of Lowndes County, Mississippi and was found guilty. As a result, McCamey was sentenced to thirty-three years imprisonment and fined $10,000. McCamey subsequently filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which was denied. Upon denial of his motion, McCamey appeals, arguing five issues, which may be consolidated into the following two issues:
I. WHETHER MCCAMEY WAS DENIED A FUNDAMENTALLY FAIR TRIAL BY REMARKS OF THE PROSECUTOR.
II. WHETHER MCCAMEY WAS DENIED HIS RIGHT TO AN IMPARTIAL JURY.
¶ 2. Finding no error, we affirm.
*225 STATEMENT OF FACTS
¶ 3. At approximately 4:00 a.m. on July 6, 2002, in Columbus, Mississippi, McCam-ey and Hodnett entered a Wal-Mart store to purchase several items. The items purchased by the two included two packages of lithium batteries, two cans of starter fluid, one package of coffee filters, five packages of Sudafed, and a seven inch pair of wire cutters. The first purchase, at 4:03 a.m., included two packages of lithium batteries, two cans of starter fluid, and two boxes of Sudafed. At 4:07 a.m., a second purchase was made, which included a package of coffee filters, and two additional boxes of Sudafed. At 4:12 a.m., a third and final purchase was made, which included a seven inch pair of wire cutters, and one additional box of Sudafed. Alarmed by the strange nature of these purchases, a cashier for Wal-Mart notified the authorities, who promptly apprehended McCamey and Hodnett in the Wal-Mart parking lot.
¶ 4. Upon apprehending the pair, the Columbus Police Department discovered in McCamey and Hodnett’s possession, inside of Hodnett’s car, approximately fourteen boxes of ephedrine-based sinus medication, three cans of ether-based starter fluid, two packages of lithium-based batteries, one package of coffee filters, one pair of seven inch wire cutters, and two hypodermic needles. As a result, the two were arrested and later indicted for having violated Mississippi Code Annotated § 41-29-313.
¶ 5. Although modeled as five arguments, there are essentially only two arguments raised on appeal. McCamey first argues that he was denied a fundamentally fair trial due to the prosecutor’s statements during closing arguments and the circumstances regarding an intelligence report authored by one of the investigating officers. McCamey’s second argument, though argued as four issues, essentially states that he was denied his right to an impartial jury, as guaranteed by the Sixth Amendment of the United States Constitution.
LEGAL ANALYSIS
I. WHETHER MCCAMEY WAS DENIED A FUNDAMENTALLY FAIR TRIAL BY REMARKS OF THE PROSECUTOR.
STANDARD OF REVIEW
The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.
Sheppard v. State, 777 So.2d 659, 661 (¶ 7) (Miss.2000) (citing Ormond v. State, 599 So.2d 951, 961 (Miss.1992)).
DISCUSSION
¶ 6. McCamey argues that he was denied a fundamentally fair trial due to the remarks of the prosecutor in which the prosecutor referred to some statements made by McCamey. In order to fully understand MeCamey’s argument, a brief discussion of the statements attributed to McCamey is warranted.
¶ 7. After McCamey’s arrest, he was questioned by members of the Mississippi Bureau of Narcotics, Clay County Sheriffs Department, and Lowndes County Sheriffs Department. During the interview, McCamey, because he was a resident of Clay County, was questioned about the drug trade in Clay County. The officers testified that McCamey made statements to them in which he stated that he “was the man when it came to cooking methamphetamine,” that “without him, couldn’t no *226 body else cook meth in the Clay County area,” and “that he had a tank containing approximately twenty five gallons of anhydrous ammonia hid.” Each of the officers testified that McCamey informed them that he was willing to participate and help out if possible, but that he would not sign a waiver of his rights, nor would he reduce anything to writing. As such, McCamey’s statements were not documented. Rather, Officer Hawkins of the Mississippi Bureau of Narcotics documented McCamey’s alleged statement in an intelligence report, as follows:
McCamey said that he does it all and with out [sic] him no one in West Point Mississippi can make Methamphetamine. He gets all the pills, gas and other supplies and even cooks Methamphetamine for himself and others. McCamey said that he steels [sic] the Anhydrous Ammonia from cotton fields and cornfields in Clarksdale and Greenwood. McCamey advised that he had in his possession 25 gallons of Anhydrous Ammonia now. McCamey advised that he had paid $1200.00 for the gas and could sell it and make 10 times what he paid.
¶ 8. Due to the nature of McCamey’s statements, McCamey’s attorney filed a motion to suppress the presentation of the statements. McCamey argued in his motion that he had not voluntarily, intelligently and knowingly waived his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At the suppression hearing, the three attending officers testified unequivocally that McCamey was read his Miranda rights, but that a waiver form was not completed, due to McCamey’s unwillingness to complete such a form. McCamey testified otherwise, stating that he had not made the alleged statements nor had he been read his Miranda rights.
¶ 9. The trial judge found that McCamey was advised of his rights, and therefore, any statements he made, oral or otherwise, were admissible. The trial judge then addressed the issue of admissibility of the intelligence report into evidence, finding that while the State could not introduce it as part of its case-in-chief, it could introduce the report as rebuttal evidence.
¶ 10. At issue is whether or not the prosecutor acted improperly regarding the attempted introduction and discussion of Officer Hawkins’s intelligence report. During the State’s case-in-chief, Officer Hawkins was under direct examination. During questioning, Officer Hawkins was permitted to testify about the statements McCamey made during the meeting. As such, the prosecutor then attempted to introduce his intelligence report as a business record, to which McCamey’s attorney objected on the grounds that the court had previously ruled the document as inadmissible. McCamey’s objection was sustained and the intelligence report was not allowed introduced into evidence.
¶ 11. Later, during McCamey’s case-in-chief, McCamey vigorously denied having ever made the alleged statements. As a result, in rebuttal, the State called Officers Huffman and Howell, two additional officers which were present at the interview during which the incriminating statements were made. The two officers corroborated the testimony of Officer Hawkins.
¶ 12. McCamey’s contention is that reversible error occurred because during closing arguments, as the prosecutor stated that McCamey did not sign a statement, because he wanted it to be:
His word against theirs [the narcotics agents]. He can say what he wants to say later, and he’s not confronted by any evidence to the contrary. And now, seeking to avoid the consequences for his action, he wants to play on Ameri *227 cans’ innate distrust of authority, and, yes, our innate dislike of police officers. We’re a nation born in rebellion. We have never liked authority, and we, as a people, don’t like cops. That’s our national characteristic. And he hopes now that you’ll be misguided by your mistrust, and you will set him free so that he can continue to ply his trade.
¶ 13. McCamey argues that the prosecutor’s statement during closing arguments was improper, as it was intended to corroborate or bolster the testimony of the police officers thus violating his Fourteenth Amendment right to due process.
¶ 14. As stated above, the test to be applied for reviewing an allegation of improper argument is “whether the natural and probable effect of the prosecuting attorney’s improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice.” Taylor v. State, 672 So.2d 1246, 1270 (Miss.1996) (quoting Dunaway v. State, 551 So.2d 162, 163 (Miss.1989)).
¶ 15. The suspect portion of the closing argument in the case sub judice, though infelicitous, can not be stated to have created unjust prejudice, resulting in a decision influenced by prejudice. Simply stated, although a poor choice of wording, such a statement does not give rise to reversal. The jury performed its duty, which was to weigh the credibility of McCamey’s testimony versus that of the officers’, and the jury found the officers testimony to be more credible. Drake v. State, 800 So.2d 508, 517 (¶ 37) (Miss.2001). It cannot be stated that the prosecutor’s remark during closing arguments would cause the jury to be prejudiced or biased in making that determination.
¶ 16. Further, the Mississippi Supreme Court has previously held that in light of the overwhelming evidence of guilt, such comments, even if improper, do not constitute reversible error. Dancer v. State, 721 So.2d 583, 590 (¶35) (Miss.1998). The overwhelming evidence showed that McCamey was indeed in possession of two or more precursor chemicals used in the manufacture of methamphetamine in violation of Mississippi Code Annotated § 41-29-313. Therefore, this issue is without merit.
II. WHETHER MCCAMEY WAS DENIED HIS RIGHT TO AN IMPARTIAL JURY.
STANDARD OF REVIEW
¶ 17. “[Jjuror impartiality and fairness is a judicial question to be determined on a case by case basis, the court’s judgment will not be disturbed unless clearly wrong.” Dennis v. State, 555 So.2d 679, 682 (Miss.1989) (citing Walls v. State, 371 So.2d 411, 413 (Miss.1979); Odom v. State, 355 So.2d 1381, 1383 (Miss.1978)).
DISCUSSION
¶ 18. McCamey raises four additional issues in his appellate brief which relate to his Sixth Amendment and Fourteenth Amendment rights to an impartial jury and a fair trial. As-each of these issues are significantly intertwined, we will address them as one issue. The issues raised are as follows:
a. Whether McCamey was denied his Sixth and Fourteenth Amendment rights due to an impartial jury.
b. Whether McCamey made a valid waiver of his Sixth and Fourteenth Amendment rights.
c. Whether McCamey was denied his Sixth and Fourteenth Amendment rights due to a conflict of interest with his legal counsel.
d. Whether McCamey made a valid waiver of his Sixth and Fourteenth *228 Amendment rights regarding his legal counsel.
¶ 19. McCamey’s first subargument is that his Sixth Amendment right to be tried by an impartial jury, as well as his Fourteenth Amendment right to a fair trial were violated by the participation of one of the jurors, a woman by the name of Martha Hinton. Immediately after McCamey was convicted, Donna Smith, McCamey’s attorney, brought to the attention of the trial judge that she had prior dealings with Hinton. After the trial, it became known that Hinton had been previously represented by Smith, and had filed a malpractice lawsuit and a bar complaint against her in Alabama. Although the two had been involved in a prior conflict, during voir dire Hinton failed to disclose this information. As a result, Hinton’s presence on the jury was not challenged. McCamey argues that due to Hinton’s prior conflict with his attorney, McCamey’s Sixth and Fourteenth Amendment rights have been violated.
¶ 20. Our law holds that a juror is disqualified within the meaning of Mississippi Code Annotated § 13-5-67 (Rev. 2002) when, during voir dire examination, he or she has withheld information or has misrepresented material facts. Myers v. State, 565 So.2d 554, 558 (Miss.1990). Further, our caselaw states that one’s failure to respond does not warrant the grant of a new trial unless the question propounded was (1) relevant to the voir dire examination, (2) unambiguous, (3) the juror had substantial knowledge of the information sought to be elicited, and (4) prejudice in selecting the jury could reasonably be inferred from the juror’s failure to respond. Odom v. State, 355 So.2d 1381, 1383 (Miss.1978).
¶21. It is clear from the record that Hinton should have been disqualified from the jury due to her prior problems with Smith. During voir dire, the prospective jurors were asked, “Do any of you know Ms. Smith or any members of her immediate family?” The question was relevant and unambiguous, Hinton had substantial knowledge of the information that she had sued Smith previously for malpractice, and as such Hinton should not have been allowed to participate as a juror.
¶ 22. The State argues that McCamey has waived his right to a new trial. Upon review of the record, we find that a few days after a guilty verdict had been returned against McCamey, the trial judge informed McCamey of the problem with Hinton’s presence on the jury and informed him that by waiving the issue, he was waiving some rights for appeal. The trial judge urged McCamey to discuss the matter with his attorney, and offered to appoint new counsel for McCamey. McCamey discussed this issue with three attorneys and filed an affidavit waving this issue for appeal. McCamey’s affidavit in pertinent part states as follows:
I am Billy Allen McCamey, the Defendant in that certain action styled State of Mississippi v. Billy Allen McCamey, Cause No.2002-0708-CRl. Both my attorney, Donna S. Smith, and the Court have informed me that a juror was seated on my case who did not respond to the Court’s question regarding whether she knew Ms. Smith or anyone in Ms. Smith’s family. I know that the juror, Martha D. Hinton, had previously sued my attorney and obtained an informal admonition directed to Ms. Smith by the Alabama State Bar.
Since being made aware of these developments, I have been independently advised by Attorney Michael R. Farrow and Attorney Carrie A. Jourdan, as well as by Ms. Smith and the Court, that this could result in a new trial being granted and, further, that her selection as a ju *229 ror could be raised as an issue on appeal of my conviction and for Post-Conviction Relief. I understand that I have the right to raise this issue, as well as the issue of ineffective assistance of counsel, on appeal and in any petition I may choose to file for Post-Conviction Relief.
Having been advised of all of this I hereby waive the issue of a juror having been selected to sit on my trial jury who failed to respond to voir dire by the Court and who had been involved in previous litigation involving my trial attorney, Donna S. Smith. I further waive the issue of ineffective assistance of counsel arising from the selection of juror Martha D. Hinton.
This the 11th day of December, 2003.
¶ 23. Further, the transcript indicates that McCamey waived this issue for appeal during open court. The portion of the transcript dealing with this issue is as follows:
BY THE COURT: 2002-0708-CR1, I had spoke to Mr. McCamey about the possibility of obtaining new counsel, and he wanted a period of time to think about it and discuss the matter with his current court-appointed counsel. Have you done that, Mr. McCamey?
BY THE DEFENDANT: Yes, sir.
BY THE COURT: Do you wish the Court to appoint new counsel for you?
BY THE DEFENDANT: No, sir.
BY THE COURT: Do you understand that means that you will be giving up maybe a ground that you have on a motion for a new trial?
BY THE DEFENDANT: Yes, sir.
BY THE COURT: And do you also understand that you may also be giving up a ground that you have on appeal; do you understand that?
BY THE DEFENDANT: Yes, sir.
BY THE COURT: That’s been explained to you?
BY THE DEFENDANT: Yes, sir.
BY THE COURT: Please prepare me an affidavit to that effect. That he’s been explained all that and put it in the record in this case. I would also think that it ought to be included in the motion for a new trial.
BY THE DEFENDANT: Your Honor?
BY THE COURT: Yes?
BY THE DEFENDANT: She did tell me earlier that this — she had already told me before I ever came in here the first time what had happened. Just to let you know she had already told me.
BY THE COURT: I assume that she did, but the record must know itself that I told you.
BY THE DEFENDANT: Oh, yes, sir. Okay. I understand. I was just letting you know that she had — she wasn’t trying to, you know, like, keep it from me or nothing. She did tell me.
BY THE COURT: The motion for a new trial could contain that as error in your trial. And if it did, Ms. Smith would be a witness. And she cannot be your lawyer and a witness at the same time.
BY THE DEFENDANT: Yes, sir.
BY THE COURT: So, if she remains your counsel as you request, that means that you give up the right to raise that in a motion for a new trial.
BY THE DEFENDANT: I understand.
BY THE COURT: It also is going to mean that you — and this will be included in the affidavit. If the motion for a new trial is overruled and you appeal to the Mississippi Supreme Court, Ms. Smith will be your counsel for appellate purposes.
BY THE DEFENDANT: Yes, sir.
*230 BY THE COURT: She cannot, herself, raise [the] ineffective assistance of counsel argument. She cannot claim that she — that you were denied effective assistance of counsel because of this because it would be her that she’d be talking about.
BY THE DEFENDANT: Right.
BY THE COURT: Another attorney could on direct appeal, but she can’t. Which also is going to mean that on — if the supreme court affirms your conviction, any post-conviction collateral relief action that you might file as an inmate with this Court, you cannot raise ineffective assistance of counsel because of that issue either. What all this means is that you are waiving or giving up the right to raise that or question that issue ever again. You understand that?
BY THE DEFENDANT: Yes, sir.
¶ 24. As the record clearly reflects, McCamey was well aware of the rights which he was waiving. McCamey has failed to demonstrate that the waiver was made with a lack of knowledge or understanding of the consequences. As such, McCamey has knowingly and intelligently waived each of the four sub-issues he raises on appeal and therefore, McCamey’s contentions are without merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF POSSESSION OF METHAMPHETAMINE PRECURSOR CHEMICALS AND SENTENCE OF THIRTY-THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., GRIFFIS, BARNES AND ISHEE, JJ. CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CHANDLER, J., NOT PARTICIPATING.