# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 27, 2011

Lyle W. Cayce
Clerk

No.  10-60224

BILLY ALLEN MCCAMEY,

Petitioner - Appellee

v.

CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS;
JIM HOOD, Attorney General of the State of Mississippi,

Respondents - Appellants

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Chief Judge:

Following his conviction for a meth-related offense, Billy Allen McCamey exhausted his state remedies on claims that he did not knowingly and intelligently waive conflict-free counsel or an impartial jury.  The federal magistrate judge, however, conducted its own evidentiary hearing and granted the writ.  Based on our review of the state court proceedings alone, we reverse. This result is a function of the high hurdle for collateral review of a "claim that was adjudicated on the merits in state court" under the Antiterrorism and

No. 10-60224

Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), and the Supreme Court's recent emphasis on the rarity of de novo federal court hearings. *Cullen v. Pinholster*, 131 S. Ct 1388 (2011).

## I.

A Wal-Mart employee in Columbus, Mississippi, called the police following a suspicious series of purchases by Billy McCamey and another man. In the early morning hours of July 6, 2002, the men bought several packages of lithium batteries, several cans of starter fluid, coffee filters, numerous boxes of Sudafed, and two pairs of wire cutters. When police apprehended the men, they discovered the products and arrested McCamey for possession of methamphetamine precursors. McCamey's first trial ended with a hung jury. His second trial is the subject of the current petition.

During voir dire, the judge asked whether any of the jurors knew Donna Smith, the public defender assigned to represent McCamey. Martha Hinton, one of the potential jurors, remained silent despite her history with Smith. She had sued Smith successfully for professional malpractice some years earlier and complained about her to the Alabama Bar. Smith maintains that she did not recognize her former client because the latter had changed her physical appearance in the years since their first encounter. Upon hearing Hinton's name during the post-verdict poll of the jury, Smith realized that the jury included a former client. She promptly advised the prosecuting attorney and the judge of her relationship to Hinton.

In response to Smith's disclosure, the trial judge convened a hearing to discuss the situation with McCamey. Smith appeared with McCamey at the hearing, but most of the dialogue passed directly between the judge and McCamey. The judge began by explaining that a former client of Smith's—one who "had sued her and obtained a judgment against her"—had served on the jury that convicted McCamey. The judge also stated that had the juror

No. 10-60224

answered truthfully during voir dire as to her prior dealings with Smith, "that juror would not have sat on your jury." In conclusion, the judge advised McCamey that "[i]f you so desire, I will relieve Ms. Smith as your attorney and appoint you another attorney," but the judge noted that McCamey might also elect to keep Smith. The following exchange then ensued:

> BY THE DEFENDANT: Yes, sir. What would be the purpose of me getting a new lawyer? I mean, why?

> BY THE COURT: He would have to -- whoever your new lawyer is would have to tell you that.

> BY THE DEFENDANT: Because I have no problem with her representation. To me it was fine. It was nothing wrong with that.

> BY THE COURT: She had a client -- a former client who had sued her on your jury.

> BY THE DEFENDANT: Yes, sir.

> BY THE COURT: She did not tell the Court or anyone else about that, nor did the client respond to that question when asked specifically about that by me --

> BY THE DEFENDANT: Yes, sir.

> BY THE COURT:  -- when we were selecting a jury.

> BY THE DEFENDANT: Yes, sir.

> BY THE COURT: I assume you recall the questions I asked.

> BY THE DEFENDANT: Yes, sir.

> BY THE COURT: "Do any of you know Ms. Smith or any immediate members of her family?" There was no response from that particular juror. If you are satisfied with Ms. Smith's representation, it may be that you waive or give up certain arguments or legal arguments that you might have either on a motion for a new trial or on appeal. It is a decision you have to make. She is still your attorney. If you want to ask her about them, you can. If you want another attorney, I will appoint you another attorney. The decision will have to be yours.

> BY THE DEFENDANT: I understand.

No. 10-60224

Following this exchange, the judge ordered a recess, during which McCamey could consider the facts just revealed to him. Smith arranged for McCamey to meet with two additional defense lawyers during the recess. One of those lawyers filed an affidavit in state court stating that he "talked to McCamey for several minutes about his situation" and "told McCamey that he did not have to accept another attorney and could waive his right to a new trial." According to the lawyer, "McCamey told me that he wanted to waive his rights." The second attorney, who met separately with McCamey, did not document the content of their meeting.

When the hearing resumed, the judge engaged McCamey in another dialogue about his intentions:

> BY THE COURT: 2002-0708-CR1, I had spoke to Mr. McCamey about the possibility of obtaining new counsel, and he wanted a period of time to think about it and discuss the matter with his current court-appointed counsel. Have you done that, Mr. McCamey?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: Do you wish the Court to appoint new counsel for you?
>
> BY THE DEFENDANT: No, sir.
>
> BY THE COURT: Do you understand that means that you will be giving up maybe a ground that you have on a motion for a new trial?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: And do you also understand that you may also be giving up a ground that you have on appeal; do you understand that?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: That's been explained to you?
>
> BY THE DEFENDANT: Yes, sir.

No. 10-60224

BY THE COURT: Please prepare me an affidavit to that effect. That he's been explained all that and put it in the record in this case. I would also think that it ought to be included in the motion for a new trial.

BY THE DEFENDANT: Your Honor?

BY THE COURT: Yes?

BY THE DEFENDANT: She did tell me earlier that this -- she had already told me before I ever came in here the first time what had happened. Just to let you know she had already told me.

BY THE COURT: I assume that she did, but the record must know [*sic*] itself that I told you.

BY THE DEFENDANT: Oh, yes, sir. Okay. I understand. I was just letting you know that she had -- she wasn't trying to, you know, like, keep it from me or nothing. She did tell me.

BY THE COURT: The motion for a new trial could contain that as error in your trial. And if it did, Ms. Smith would be a witness. And she cannot be your lawyer and a witness at the same time.

BY THE DEFENDANT: Yes, sir.

BY THE COURT: So, if she remains your counsel as you request, that means that you give up the right to raise that in a motion for a new trial.

BY THE DEFENDANT: I understand.

BY THE COURT: It also is going to mean that you -- and this will be included in the affidavit. If the motion for a new trial is overruled and you appeal to the Mississippi Supreme Court, Ms. Smith will be your counsel for appellate purposes.

BY THE DEFENDANT: Yes, sir.

BY THE COURT: She cannot, herself, raise [the] ineffective assistance of counsel argument. She cannot claim that she -- that you were denied effective assistance of counsel because of this because it would be her that she'd be talking about.

BY THE DEFENDANT: Right.

BY THE COURT: Another attorney could on direct appeal, but she can't. Which also is going to mean that on -- if the supreme court

5

No. 10-60224

affirms your conviction, any post-conviction collateral relief action that you might file as an inmate with this Court, you cannot raise ineffective assistance of counsel because of that issue either. What all this means is that you are waiving or giving up the right to raise that or question that issue ever again. You understand that?

BY THE DEFENDANT: Yes, sir.

BY THE COURT: Okay. That's what I wanted the attorneys to explain to you.

The same day, McCamey filed his written affidavit, which states:

> I am Billy Allen McCamey, the Defendant in that certain action styled *State of Mississippi v. Billy Allen McCamey*, Cause No.2002-0708-CR1. Both my attorney, Donna S. Smith, and the Court have informed me that a juror was seated on my case who did not respond to the Court's question regarding whether she knew Ms. Smith or anyone in Ms. Smith's family. I know that the juror, Martha D. Hinton, had previously sued my attorney and obtained an informal admonition directed to Ms. Smith by the Alabama State Bar.

> Since being made aware of these developments, I have been independently advised by Attorney Michael R. Farrow and Attorney Carrie A. Jourdan, as well as by Ms. Smith and the Court, that this could result in a new trial being granted and, further, that her selection as a juror could be raised as an issue on appeal of my conviction and for Post-Conviction Relief. I understand that I have the right to raise this issue, as well as the issue of ineffective assistance of counsel, on appeal and in any petition I may choose to file for Post-Conviction Relief.

> Having been advised of all of this I hereby waive the issue of a juror having been selected to sit on my trial jury who failed to respond to voir dire by the Court and who had been involved in previous litigation involving my trial attorney, Donna S. Smith. I further waive the issue of ineffective assistance of counsel arising from the selection of juror Martha D. Hinton.

Based on McCamey's affidavit and the verbal exchanges between McCamey and the trial judge, the Mississippi appellate court determined that McCamey had waived the right to challenge his conviction on the basis of juror

No. 10-60224

bias and ineffective assistance of counsel. *McCamey v. State*, 923 So.2d 223, 230 (Miss. Ct. App. 2005). In so holding, the court stated that "McCamey was well aware of the rights he was waiving." *Id.* The Mississippi Supreme Court denied McCamey's petition for *certiorari* in the direct appeal, *McCamey v. State*, 927 So.2d 750 (2006), and likewise denied his petition for post-conviction relief. In the latter action, McCamey raised the same issues that he did on direct appeal, and the state Supreme Court wrote that he "failed to make a substantial showing of the denial of a state or federal right . . . ."

Following his unsuccessful efforts in state court, McCamey sought collateral review in federal court under 28 U.S.C. § 2254, arguing that the conviction violated his Sixth and Fourteenth Amendment rights. Integral to this claim is that he did not knowingly and intelligently waive his rights to an impartial jury or conflict-free counsel. To that end, McCamey requested, and the magistrate judge granted, an evidentiary hearing. After weighing the newly enhanced record, the magistrate judge issued a 71-page report and recommendation concluding that McCamey was entitled to habeas relief. In a two-page opinion and over the State's objections, the district court adopted the report and recommendation. The State appeals.

## II.

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (internal quotation omitted). Federal courts' standard of review in habeas cases is statutorily defined in AEDPA.

AEDPA establishes a high threshold for habeas petitioners who raise a "claim that was adjudicated on the merits in State court." 28 U.S.C. § 2254(d). A petition presenting such a claim can prevail only if the state-court decision:

7

(1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* Neither party argues that the issue in this appeal—whether Billy Allen McCamey waived his rights to an impartial jury and conflict-free counsel—was not "adjudicated on the merits" in Mississippi courts.

## III.

### A. Evidentiary Hearing

The federal magistrate judge granted McCamey's motion for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e). The Supreme Court has recently clarified the narrow applicability of the hearing provision, rendering the hearing inappropriate in this case. As a result, the district court's review should have been—and our review is—confined to the record in the state court.

Federal habeas review under 28 U.S.C. § 2254(d)(1) asks whether a state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Supreme Court has recently interpreted this "backward-looking language" to confine habeas review to the record before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The issue in *Pinholster* was whether the petitioner's counsel was ineffective for failing to introduce additional mitigation evidence. Although the California Supreme Court dismissed the petition as meritless, a federal district court conducted an evidentiary hearing, received expert testimony regarding the petitioner's psychological condition, and granted the writ. The en banc Ninth Circuit affirmed, but the Supreme Court reversed, discussing the limited availability of federal evidentiary hearings in habeas cases: "We now hold that review under

No. 10-60224

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

Confining collateral review to the record before the state court follows AEDPA. The statute states that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Consistent with this presumption, § 2254 allows an evidentiary hearing in federal court only under narrow circumstances:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). As the Court explained in *Pinholster*, "[t]he focus of that section is . . . on *limiting* the discretion of federal district courts in holding hearings." 131 S. Ct. at 1401 n.8 (emphasis added). Section 2254(e)(2) is not, however, meaningless. It remains an important tool in cases where habeas petitioners raise a claim that was not "adjudicated on the merits in State court"—*i.e.*, a claim to which § 2254(d) does not apply. *Pinholster*, 131 S. Ct. at 1401. The high bar for introducing evidence in a § 2254(d) case accords with "the basic structure of federal habeas jurisdiction," which acknowledges that "state

No.  10-60224

courts are the principal forum for asserting constitutional challenges to state convictions."  *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).[1]

The Supreme Court had not decided *Pinholster* at the time of the district court's decision in the present case.  That timing is unfortunate, as writs were granted in both cases following federal court evidentiary hearings.  McCamey's petition alleges that the Mississippi courts ruled "contrary to clearly established federal law" when concluding that he waived his rights to an impartial jury and to conflict-free counsel.  Although the petition does not cite § 2254(d)(1), its language tracks that provision.  For its part, the federal court cited § 2254(e)(2) when ordering an evidentiary hearing.  The interaction of these two provisions is exactly the subject of *Pinholster*.

The state anticipated the holding in *Pinholster* when it opposed McCamey's motion for an evidentiary hearing because neither of the exceptional circumstances in § 2254(e)(2) were present.  In response, the magistrate judge focused on the provision's introductory clause: "If the applicant has failed to develop the factual basis of the claim . . . ."  Relying on the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 420, 432, 120 S. Ct. 1470, 1488 (2000), the court reasoned that "[t]he necessity for meeting the exceptions of this statutory provision only apply when the failure to develop the factual basis for the claim is attributable to some decision or omission of the petitioner."[2] *McCamey v. Epps*, 696 F.Supp. 2d 667, 681 (N.D.Miss. 2010).  But *Williams* is inapposite.  The holding in *Williams* addressed claims that were not adjudicated on the merits in the state court.  529 U.S. at 429, 120 S. Ct. at 1486 ("Petitioner did not develop, or raise, his claims of juror bias, prosecutorial misconduct, or

---

[1] *Pinholster* abrogates this court's prior, contrary decision in *Guidry v. Dretke*, 397 F.2d 306 (5th Cir. 2005), *reh'g en banc denied*, 429 F.3d 154 (5th Cir. 2005).

[2] McCamey did not argue and the district court did not hold that either of the circumstances in § 2254(e)(2) existed in the present case.

the prosecution's alleged *Brady* violation . . . until he filed his federal habeas petition."). The one exception was a claim on which the district court denied relief on the merits, making it "unnecessary to reach the question whether § 2254(e)(2) would permit a hearing on the claim." *Id.* at 444. In short, the grounds for relief in *Williams* were either not adjudicated in state court or did not require the Supreme Court to reach them. *Pinholster* held that "*Williams* did not concern whether evidence introduced in such a hearing could be considered under § 2254(d)(1)." 131 S. Ct. at 1400. Because the present case, like *Pinholster*, concerns only claims under § 2254(d)(1), we must reject the district court's application of *Williams* and decline to consider the evidence developed in the federal court hearing. This court's review of McCamey's waiver therefore considers only the state-court record.

## B. Waiver

Because the Mississippi courts held that the challenged juror, Martha Hinton, "should not have been allowed to participate as a juror," *McCamey v. Mississippi*, 923 So.2d 223, 228 (Miss. Ct. App. 2005), the only question in this appeal is whether McCamey waived his rights to an impartial jury and conflict-free counsel. From the standpoint of AEDPA, this court's inquiry is limited to whether the Mississippi courts, in finding an enforceable waiver, unreasonably applied governing Supreme Court precedent.

The Supreme Court has long viewed with suspicion defendants' waivers of their constitutional rights. Far from honoring any statement that might effect a waiver, "courts indulge every reasonable presumption against waiver . . . ." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938). To rebut the presumption, a waiver must be informed and voluntary. *United States v. Brady*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances

and likely consequences."). The responsibility for ensuring that waivers satisfy the Supreme Court's requirements belongs to the trial judge. *Schneckloth v. Bustamonte*, 412 U.S. 218, 244, 93 S. Ct. 2041, 2056 (1973). But federal courts must presume the correctness of the state courts' factfinding underlying a waiver determination according to AEDPA's exacting test. 28 U.S.C. § 2254(e)(1).

In the present case, the trial judge had two verbal exchanges with McCamey and also insisted on a written waiver prepared with the assistance of counsel. Based on these measures and McCamey's opportunity to discuss his situation with two independent lawyers, the state courts did not unreasonably conclude that McCamey's waiver was in accordance with federal law.

As required in *Brady*, the trial court alerted McCamey to the "relevant circumstances and likely consequences" surrounding his waiver. This information included both the factual and legal background against which McCamey would make his decision: first, that one of McCamey's jurors had a prior relationship with Smith; second, if the court had known of the relationship, "that juror would not have sat on your jury"; and third, that McCamey could have new counsel, possibly for the purpose of an appeal or motion for new trial. The court also solicited questions from McCamey, who asked, "What would be the purpose of me getting a new lawyer?" McCamey went on to state that "I have no problem with her representation." The court responded "She had a client -- a former client who had sued her on your jury." To an ordinary person, the judge's response conveyed the relevant circumstances. In fact, his succinct answer likely served McCamey better than a jargonized allusion to "conflicts of interest."

Following McCamey's conversation with two independent public defenders, whom Smith had brought in to help, the court asked whether McCamey desired new counsel. When he declined the offer, the court asked separately whether

12

McCamey realized that he was (1) "giving up maybe a ground that you have on a motion for a new trial" and (2) "giving up a ground that you have on appeal." To both questions, McCamey responded "Yes, sir." Later in the colloquy, the court again reminded McCamey that if Smith "remains your counsel as you request, that means that you give up the right to raise that in a motion for a new trial. . . . She cannot claim that she -- that you were denied effective assistance of counsel because of this . . . ." McCamey's affidavit finishes the work begun by the trial judge. It states in part:

> I have been independently advised . . . that this could result in a new trial being granted and, further, that her selection as a juror could be raised as an issue on appeal of my conviction and for Post-Conviction Relief. I understand that I have the right to raise this issue, as well as the issue of ineffective assistance of counsel, on appeal and in any petition I may choose to file for Post-Conviction Relief.

McCamey's affidavit proceeds to waive his rights regarding both juror bias and ineffective assistance. The repeated, direct statements of the circumstances and consequences of McCamey's waiver support the state courts' conclusion that his waiver was knowing and voluntary. In any event, such conclusion is not contrary to federal law as established by the Supreme Court.

The district court repeatedly states that no one "named" the rights McCamey would be waiving. *See, e.g., McCamey*, 696 F.Supp. 2d at 700 ("Nothing in the written record corroborates that Smith expressly named the rights implicated in her discussions with McCamey."); *id.* at 701 ("He [the judge] names none of the rights McCamey will be waiving."). As far as the court is concerned, "the failure to name the rights is in fact a crucial failure." *Id.* at 705. The court continues: "a fundamental constitutional right must be named to be 'known.'" *Id.* This conclusion proposes, if anything, a new rule of constitutional law. The test announced by the Supreme Court and the Fifth Circuit requires

that any waiver be "knowing and voluntary." *Brady*, 397 U.S. at 748, 90 S. Ct. at 1469; *United States v. Burns*, 433 F.3d 442, 449 (5th Cir. 2005) (quoting *Brady*).  The Court has never equated a "knowing and voluntary" waiver with a formal naming of rights.  In some cases, a defendant's limited education will render a formal naming useless, because the "naming" alone fails to make known the scope of the right or its consequences for the defendant.  Here, in fact, the lack of technical language might have increased the likelihood that McCamey, who has an 11th-grade education, would make a knowing and voluntary decision.

Contrary to the magistrate judge's suggestion, the test for a valid waiver is a case-specific inquiry into "all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469.  The circumstances surrounding McCamey's waiver do not suggest that the Mississippi courts unreasonably concluded that the waiver satisfied the constitutional standard.  Both the trial judge and the affidavit informed McCamey that he was foregoing appellate and post-conviction relief and why he had "rights" to protect.  No Supreme Court precedent embroiders the "all relevant circumstances" test by requiring, in addition, a particular legal exposition of the right to be waived.  Accordingly, the Mississippi courts transgressed no precedent so clearly as to warrant reversal on collateral review.

## Conclusion

In light of *Pinholster*, the district court erred in allowing an evidentiary hearing under 28 U.S.C. § 2254(e)(2).  With the evidence properly confined to the record before the state courts, we REVERSE the grant of habeas relief.

**REVERSED.**