**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4239

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JEFFREY EDELEN,

Defendant – Appellant.

No. 12-4246

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KENDALL TAYLOR, a/k/a Shamsideen Salaam,

Defendant – Appellant.

No. 12-4711

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DARRELL JOSE CARTER, a/k/a Shorty,

        Defendant – Appellant.

---

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Chief District Judge. (8:11-cr-00288-DKC-2; 8:11-cr-00288-DKC-3; 8:11-cr-00288-DKC-1)

---

Argued: January 30, 2014             Decided: March 13, 2014

---

Before MOTZ and THACKER, Circuit Judges, and DAVIS, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Gerald Chester Ruter, Baltimore, Maryland; Julie L. B. Johnson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellants. Jerome M. Maiatico, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant Darrell Jose Carter. Steven H. Levin, Baltimore, Maryland, for Appellant Jeffrey Edelen. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal grand jury indicted Appellants Darrell Carter ("Appellant Carter"), Kendall Taylor ("Appellant Taylor"), and Jeffrey Edelen ("Appellant Edelen") (collectively "Appellants") for conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c), and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Following a jury trial, all three Appellants were convicted of the conspiracy charge. The jury was unable to reach a unanimous verdict on the firearms charge, and the district court declared a mistrial on that count. The court sentenced Appellant Carter to 420 months imprisonment, Appellant Taylor to 420 months imprisonment, and Appellant Edelen to 360 months imprisonment. On appeal, Appellants raise a host of challenges to their respective convictions and sentences. For the reasons below, we affirm.

I.

A.

The relevant facts adduced at trial are as follows. On the evening of January 13, 2011, LaKendra McNair ("Ms. McNair"), a bank manager employed in Washington, D.C., left work and returned to her home in Fort Washington, Maryland. Appellants, who were lying in wait outside her home, accosted her and forced their way inside. Ms. McNair testified that the

3

men, who were carrying guns and wearing hoods, masks, and gloves, repeatedly threatened to kill her.

Ms. McNair's twelve-year-old son, who was upstairs, heard the commotion and locked himself in a bathroom. He called his father and advised him that someone was breaking in, at which point his father called the police. Appellants, who were now inside the home, forced Ms. McNair to coax her son into the open. When she did so, Appellants bound his wrists and legs, covered his head, and separated him from his mother. Both victims testified that the men continued to point guns at them and threaten their lives.

Having secured her son, Appellants led Ms. McNair into the kitchen, instructing her that they intended to hold the boy hostage until she complied with their demands. Specifically, they wanted Ms. McNair to go "back to the bank" to get "money out of the vault." J.A. 337.[1] When she advised that she could not enter the bank vault without the assistance of a co-worker, one of the Appellants, apparently in an effort to impress upon her the gravity of the situation, recited various personal details about her friends and family.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

While the three men were interrogating Ms. McNair, numerous police officers arrived at the scene. Appellants directed Ms. McNair to answer the door and assuage the officers' concerns. As she did so, Ms. McNair saw that her son had been left unattended in the living room. She seized the opportunity, took the boy, and fled through the front door. During the prolonged standoff that ensued, police officers observed Appellants moving throughout the home. Eventually, one by one, Appellants walked out of the house and surrendered to the police. None were carrying guns or wearing masks.

Although police officers conducted a search of the premises on the night of the attack, they did not recover any firearms from the scene. In the ensuing months, however, Ms. McNair and her son continued to find various items hidden throughout their home, including a ski mask, a pair of gloves, a taser gun, a .40 caliber firearm, and a .45 caliber firearm.

B.

On May 23, 2011, a federal grand jury in the District of Maryland returned a two-count indictment charging Appellants with conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c), and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). On November 23, 2011, following a ten-day trial, a jury found all three Appellants guilty of the conspiracy charge. The jury was unable

5

to reach a unanimous verdict as to the firearms charge, and the district court declared a mistrial on that count.

The district court sentenced Appellants Taylor and Edelen on March 26, 2012, and Appellant Carter on September 5, 2012. For all three Appellants, the court found a base offense level of 32, pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") §§ 2X1.1(a) and 2A4.1(a), and applied two enhancements -- the two-level weapons enhancement under U.S.S.G. § 2A4.1(b)(3) and the two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b). With respect to Appellants Taylor and Carter, the district court also applied the two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. Prior to any Chapter Four enhancements, then, Appellants Taylor and Carter had an adjusted offense level of 38, and Appellant Edelen had an adjusted offense level of 36.

Inasmuch as Appellant Taylor did not qualify as a career offender, the district court determined that his total offense level was 38 and his criminal history category was III. Although this resulted in a guideline range of 292 to 365 months, the court varied upward and sentenced him to 420 months. Appellant Carter, on the other hand, did qualify as a career offender based on his two prior convictions for robbery in Virginia state court. Nevertheless, his offense level remained 38 because the guideline range produced by the career offender

6

designation, 37, was lower. See U.S.S.G. § 4B1.1(b). Although the career offender designation did raise Appellant Carter's criminal history score from V to VI, this change did not affect his guideline range, which remained 360 months to life in prison; ultimately, the court sentenced him to 420 months in prison. The court also determined that Appellant Edelen qualified as a career offender based on his prior drug distribution and armed robbery convictions in Washington, D.C. Consequently, his guidelines were governed by U.S.S.G. § 4B1.1, which resulted in an offense level of 37, a criminal history category of VI, and guideline range of 360 months to life in prison. The court sentenced him to 360 months in prison.

These consolidated appeals followed. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

On appeal, Appellants raise eight issues relating to their convictions and sentences, three of which warrant discussion.[2] First, Appellant Taylor contends the district court abused its discretion in accepting his pre-trial waiver of the right to conflict-free counsel. Second, all three Appellants

[2] We have fully considered the other five issues raised by Appellants and conclude that each lacks merit.

7

contend the district court erred by admitting a text message into evidence at trial. Third, Appellants Taylor and Carter contend the district court erred by applying the two-level obstruction of justice enhancement contained in U.S.S.G. § 3C1.1 to their respective sentences. We address each of these issues in turn.

A.

We turn first to Appellant Taylor's argument that the district court abused its discretion in accepting his pre-trial waiver of the right to conflict-free counsel. This challenge presents two separate, but interrelated, inquiries: (1) whether Appellant Taylor knowingly, intelligently, and voluntarily waived his right to conflict-free representation, which we review de novo, see United States v. Brown, 202 F.3d 691, 697 (4th Cir. 2000); and (2) whether the district court properly exercised its discretion in permitting Appellant Taylor to waive his attorney's conflict and proceed to trial, which we review for abuse of discretion, see United States v. Williams, 81 F.3d 1321, 1324 (4th Cir. 1996). We answer both of these questions in the affirmative.

1.

On July 12, 2011, over a month after Appellant Taylor's initial appearance, Arthur McKinley Reynolds, Jr. ("Mr. Reynolds") filed a Notice of Appearance indicating he had been

8

retained as Appellant Taylor's counsel. On October 26, 2011, thirteen days before the jury trial was set to begin, the Government filed a letter alerting the district court to a potential conflict of interest on the part of Mr. Reynolds, i.e., that Mr. Reynolds represented an "unindicted co-conspirator," William "Puffy" Cole ("Mr. Cole"), who had "provided information to [Appellants], which resulted in [Appellants'] targeting of [Ms. McNair]." J.A. 61.

The district court took up the issue at a pretrial motions hearing on November 1, 2011. During that hearing, the Government elaborated:

> I believe that Mr. Reynolds represents or has represented William Cole in state court on robbery charges in Prince George's County. Mr. Cole is believed to be the unindicted co-conspirator in this case. The government provided discovery back in June and I believe Mr. Reynolds also has the state discovery and in that there are text messages and phone records which indicate that Mr. Cole was in contact with [Appellants] while they were in the house during this attempted kidnapping and, indeed, there's a text message from the previous day that's sent from William Cole to [Appellant] Edelen to the effect that "We have to do something about this. The woman is not home. We've got to do something about this." I'm trying not to use the profanity that was in the text message. And it contains information that was only known about the victim by a few people and, based on that information, we intend to present to the jury the information about how Mr. William Cole knew information about the victim and they targeted this victim based on his information about her. And I believe Mr. Reynolds represents William Cole and also represents the co-conspirator here, Mr. Taylor.

J.A. 66.

9

Mr. Reynolds affirmed that he had been retained to represent Mr. Cole in an unrelated state robbery case, which he described as in "dormant status" because Mr. Cole was in custody on federal bank robbery charges. J.A. 67. After confirming that neither the Government nor the defense intended to call Mr. Cole as a witness, the district court concluded that the situation presented a "potential conflict." Id. at 69. The court then conducted a colloquy with Appellant Taylor to ensure he understood the potential conflict and desired to keep Mr. Reynolds as his attorney. The court advised Appellant Taylor, inter alia,

> the fact that [Mr. Reynolds] represents [Mr. Cole] may inhibit or prevent [Mr. Reynolds] from being or feeling completely free to represent you when [Mr. Cole's] participation comes up. . . . And this can affect his decisions in terms of what questions to ask and how to represent you at a trial. It may also affect him in his advice to you concerning how to approach the charges here, whether to talk about a plea, whether to go to trial, all of those matters that are very important for an attorney to talk with a client about.

Id. at 72-73. Appellant Taylor affirmed at all times that he understood, declined the court's offer of an opportunity to consult with independent counsel, and finally, affirmatively

10

stated that he was "giving up th[e] right" to conflict-free counsel. Id. at 74.[3]

During trial, the Government elicited testimony from Ms. McNair regarding her relationship with Mr. Cole and presented evidence of a text message sent by a contact identified as "Puffy" to Appellant Edelen's cell phone on January 12, 2011, the day before the attack. Counsel for all three Appellants cross-examined Ms. McNair as to her relationship with Mr. Cole. At the close of the second day of trial, counsel for Appellants Taylor and Carter advised the court, and Mr. Reynolds, that they intended to call Mr. Cole as a witness. Nevertheless, for reasons that are not apparent on the record, neither attorney pursued this course of action.

2.

We first examine the adequacy of Appellant Taylor's conflict of interest waiver insofar as it relates to his trial counsel's concurrent representation of Mr. Cole. Appellant Taylor contends the district court's inquiry "was

---

[3] Specifically, at the close of the court's colloquy, it inquired, "Are you giving up, waiving your right to have an attorney represent you who is completely free of any potential conflict of interest?" and went on to explain, "In order to have Mr. Reynolds continue, in effect it means that you are giving up your right to have an attorney who doesn't have another client who may interfere with his representation." J.A. 73-74. Appellant Taylor responded, "I'm giving up that right." Id. at 74.

11

constitutionally inadequate to guarantee [his] waiver was knowingly and intelligently made." Appellants' Br. 45. We disagree.

A defendant may waive his Sixth Amendment right to an attorney who is "free from conflicts of interest," Wood v. Georgia, 450 U.S. 261, 271 (1981), so long as his waiver is "'knowing, intelligent, and voluntary.'" Brown, 202 F.3d at 697 (quoting United States v. Gilliam, 975 F.2d 1050, 1053 (4th Cir. 1992)); see also Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978). A waiver is only knowing and intelligent if made with "sufficient awareness of the relevant circumstances and likely consequences," Brady v. United States, 397 U.S. 742, 748 (1970), and as such, a defendant must know the basis for, and potential consequences of, his chosen counsel's alleged conflict in order to make an "intelligent choice" whether to waive the conflict. United States v. Duklewski, 567 F.2d 255, 257 (4th Cir. 1977); see also Hoffman v. Leeke, 903 F.2d 280, 289 (4th Cir. 1990) ("A defendant cannot knowingly and intelligently waive what he does not know."). In practical terms, this means that a defendant's conflict of interest waiver is valid if he "waives the conflict with knowledge of the crux of the conflict and an understanding of its implications . . . even if [he] does not know each detail concerning the conflict." Brown, 202 F.3d at 698 (emphasis omitted).

12

Here, the district court warned Appellant Taylor about the exact scenario that arose during trial -- the Government's presentation of evidence regarding Mr. Cole's involvement in the case. Per the district court's colloquy, Appellant Taylor was aware that Mr. Reynolds' representation of Mr. Cole "may inhibit or prevent [Mr. Reynolds] from being or feeling completely free to represent [Appellant Taylor] when [Mr. Cole's] participation c[ame] up" or "affect [Mr. Reynolds'] decisions in terms of what questions to ask and how to represent [Appellant Taylor] at . . . trial." J.A. 72. He nonetheless elected to waive this conflict and proceed with Mr. Reynolds as his counsel. Indeed, the primary assignments of error Appellant Taylor set forth on appeal -- that Mr. Reynolds' concurrent representation of Mr. Cole may have impacted Mr. Reynolds' decision not to call Mr. Cole as a witness and the vigorousness of Mr. Reynolds' cross-examination of Ms. McNair -- fall squarely within the ambit of the district court's warning. Cf. United States v. Akinseye, 802 F.2d 740, 745-46 (4th Cir. 1986) (concluding that a pre-trial waiver of a potential conflict of interest waives the actual conflict of interest that ripens, as the defendant was warned, from that potential during trial).

Tellingly, Appellant Taylor fails to identify any areas in which the district court's inquiry, or his own knowledge, was lacking. He instead points generally to United

13

States v. Urutyan, 564 F.3d 679 (4th Cir. 2009), in which the district court conducted a "full evidentiary hearing" to determine the scope of an attorney's conflict. Appellants' Br. 45. In Urutyan, however, the district court was faced with the possibility that a defendant's counsel of choice had been hired and paid by a third party who was a member of the defendant's alleged criminal enterprise. 564 F.3d at 681-82. The district court conducted an evidentiary hearing, found a "great likelihood" that the allegations against defense counsel were true, and, in a decision that we ultimately upheld, actually disqualified the attorney over the defendant's strenuous objection. Id. at 682-83, 686-87. Quite simply, Urutyan involved a different and more complex factual scenario than that presented here and, in any event, does not represent a Sixth Amendment floor. See, e.g., Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ("The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case[.]").

In sum, the record of the colloquy in this case plainly demonstrates that the court advised Appellant Taylor of both "the crux of the conflict" and its potential implications for his defense. Brown, 202 F.3d at 698. Therefore, we conclude Appellant Taylor was fully aware of the basis for, and

14

the potential implications of, Mr. Reynolds' concurrent representation of unindicted co-conspirator Mr. Cole at the time he waived his right to conflict-free counsel. Consequently, his waiver is valid as to that conflict.

3.

Appellant Taylor next argues that the district court had an obligation, notwithstanding his waiver, to disqualify Mr. Reynolds because his conflict of interest was so severe as to be unwaivable. We conclude the court acted well within its substantial discretion in accepting the waiver and allowing Appellant Taylor to proceed to trial with the counsel of his choice.

It is well-established that a defendant's presumptive right to be represented by the attorney of his choice may be overcome by the district court's independent interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988). Accordingly, district courts are "allowed substantial latitude in refusing" -- and in accepting -- "waivers of conflicts of interest." Id. at 163; cf. Hoffman, 903 F.2d at 288 ("We recognize that a trial court has broad latitude to permit or prohibit multiple representation." (internal quotation marks and citation omitted)). "The

15

evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." Wheat, 486 U.S. at 164.

Although we have never specified the circumstances in which a district court must override a defendant's otherwise valid conflict of interest waiver, the decisions of our sister circuits provide some guidance. The Second Circuit, for example, holds that an actual conflict of interest "so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation" cannot be waived. United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995); see also United States v. Martinez, 143 F.3d 1266, 1270 (9th Cir. 1998) (citing Lussier with approval). Similarly, the Fifth Circuit frames the issue in terms of a conflict that is "so severe as to render a trial inherently unfair." United States v. Vaquero, 997 F.2d 78, 90 (5th Cir. 1992). We need not settle on a precise formulation of the controlling principle for the purposes of this case; the facts alleged by Appellant Taylor fail to demonstrate the existence of a conflict approaching either of these standards.

Appellant Taylor has alleged, at most, that Mr. Reynolds' concurrent representation of Mr. Cole may have affected certain aspects of his trial strategy, i.e., his choice of witnesses and the vigor of one of his cross-examinations.

16

Even if we take these allegations at face value, they demonstrate a situation that, while concerning, is far from an actual conflict "so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation," Lussier, 71 F.3d at 461, or one "so severe as to render [the] trial inherently unfair," Vaquero, 997 F.2d at 90. Indeed, as discussed in detail supra, Appellant Taylor was specifically advised of the potential for Mr. Reynolds to make each and every allegedly deleterious decision of which he now complains, and he nonetheless sought to proceed with Mr. Reynolds' representation. The district court acted well within its substantial latitude when it granted Appellant Taylor's request.

## B.

We turn now to Appellants' argument that the district court erred by admitting into evidence an incoming text message recovered from Appellant Edelen's cell phone. We review the court's decision to admit this evidence for abuse of discretion and "will only overturn an evidentiary ruling that is arbitrary and irrational." United States v. Cone, 714 F.3d 197, 219 (4th Cir. 2013) (internal quotation marks and citations omitted). Appellants contend the text message constitutes inadmissible

17

hearsay under Federal Rule of Evidence 802 because it was offered for the truth of the matter asserted. We disagree.[4]

The text message, which was introduced through the testimony of Detective Joseph Bunce, was sent to Appellant Edelen's cell phone on January 12, 2011, the day before the attack, by a contact identified as "Puffy." The message read as follows: "This bitch is at crystal house cuz her father died today so I have no idea when she is gonna be going home Ahk. we got to try something man[.]" J.A. 935-36, 1333. Notably, Ms. McNair had earlier testified that Mr. Cole, a/k/a "Puffy," had been inquiring about her whereabouts around the time of the attack and that, on January 12, 2011, she had advised him that

---

[4] Although Appellants argue in their joint brief that "Defendants' attorneys" objected to the introduction of the text message on hearsay grounds, Appellants' Br. 17, this statement is accurate only insofar as it relates to Appellants Taylor and Carter. We have found nothing in the record to indicate that counsel for Appellant Edelen objected to the evidence in question; to the contrary, his attorney went so far as to admit, "I've tried for months to figure out a way to keep [the text message] out, and I can't." J.A. 905. Although this awkward presentation begs the question of whether Appellant Edelen can rely on the objections of Appellants Taylor and Carter in order to avoid plain error review, see Fed. R. Crim. P. 52(b), we need not decide this issue in order to resolve the instant appeal. For the reasons discussed infra, even if we assume that Appellant Edelen preserved this issue, his claim fails on abuse of discretion review. See, e.g., United States v. Palacios, 677 F.3d 234, 245 n.6 (4th Cir. 2012) (assuming that defendant preserved evidentiary objections where arguments failed even under preserved error standard).

18

she was at her friend Crystal's house because Crystal's father had passed away.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A "statement" is an oral or written assertion, Fed. R. Evid. 801(a), and "the matter asserted" is "the fact being asserted by the declarant in uttering the statement," United States v. Lewis, 594 F.3d 1270, 1282 (10th Cir. 2010). In order to determine whether an out-of-court statement qualifies as inadmissible hearsay under this Rule, the district court must "identify[] the actual purpose for which a party is introducing" the statement at issue. United States v. Gonzales-Flores, 701 F.3d 112, 117 (4th Cir. 2012). A statement is not hearsay if it is offered for some purpose other than to prove the truth of the assertion contained within the statement. See United States v. Pratt, 239 F.3d 640, 644 (4th Cir. 2001).

The district court concluded the text message was not hearsay because "it's not being offered for the truth. . . . [It] [d]oesn't matter whether [the text message is] true or not. It only matters that somebody in the house had access to the information. Circumstantial evidence of communication." J.A. 901. The Government likewise contends the statement "was

19

offered to show the fact and timing of communication between co-conspirators, and its effect on [Appellant] Edelen's knowledge and state of mind." Appellee Br. 29-30. Appellants, on the other hand, paint these justifications as mere pretext, arguing that the true purpose behind the Government's introduction of the text message was to prove the truth of the matter asserted therein, i.e., "that [Appellants] had access to information that was truthful regarding Ms. McNair's whereabouts and personal details about her life." Appellants' Br. 23.

At the outset, we note that the text message, like most statements, had the potential to serve either hearsay or non-hearsay purposes. In this vein, the district court offered to instruct the jury that it could not consider the text message for the truth of its contents. See J.A. 901 ("[The text message] is not being offered for the truth. . . . I can tell the jury that if you wish me to."). Appellants refused this offer, and in so doing, explicitly waived an opportunity to limit the text message to its permissible purposes. See Fed. R. Evid. 105. As observed by the Seventh Circuit, "the defendants cannot have it both ways -- [they] cannot refuse a limiting instruction and then claim on appeal that the evidence was unfairly prejudicial." Goetz v. Cappelen, 946 F.2d 511, 514 (7th Cir. 1991); cf. United States v. Tedder, 801 F.2d 1437, 1445 (4th Cir. 1986) ("By refusing a proffered curative

instruction, defense counsel made a tactical decision to forego a remedy that we have repeatedly held to be adequate. This waiver does not entitle defendants to a new trial."). In our view, Appellants' strategic decision to refuse the district court's offer severely undermines their claim that they are entitled to relief because the jury impermissibly, and prejudicially, considered the text message for its truth. See generally United States v. Day, 700 F.3d 713, 727 n.1 (4th Cir. 2012) ("[A] 'defendant in a criminal case cannot complain of error which he himself has invited.'" (quoting Shields v. United States, 273 U.S. 583, 586 (1927))).

Appellants' theory, in any event, suffers from a readily apparent flaw -- the "matter asserted" in the text message was not, as Appellants contend, that they "had access to information that was truthful regarding Ms. McNair's whereabouts and personal details about her life." Appellants' Br. 23. To the contrary, the only factual assertion contained in the text message was "bitch is at crystal house cuz her father died today." J.A. 1333. Irrespective of the truth or falsity of this description of Ms. McNair's physical location on January 12, 2011, or the reason for her presence there, the text message (1) forms a link between Appellant Edelen and "Puffy" by the simple fact that it "was made," United States v. Ayala, 601 F.3d 256, 272 (4th Cir. 2010) ("'[E]vidence is not hearsay when it is

21

used only to prove that a prior statement was made[.]'" (quoting Anderson v. United States, 417 U.S. 211, 220 n.8 (1974)); and (2) serves to support an inference that Appellant Edelen had access to, and likely received, certain information about Ms. McNair prior to the commission of the offense, which is plainly probative of his underlying knowledge and intent in targeting her home. See United States v. Safari, 849 F.2d 891, 894 (4th Cir. 1988) (a statement is not hearsay if offered to "show . . . [the listener's] knowledge"); see also United States v. Ibisevic, 675 F.3d 342, 349 (4th Cir. 2012) (noting parenthetically that "statements offered to prove 'that they were made and that [the defendant] believed them to be true'" are not hearsay (quoting United States v. Kohan, 806 F.2d 18, 22 (2d Cir. 1986))).[5]

Appellants' argument to the contrary rests primarily upon the portion of Ms. McNair's testimony that corroborates the

---

[5] Appellants pepper their reply brief with vague indictments against the text message on a variety of evidentiary grounds, i.e., that the text message was not relevant insofar as Appellant Edelen's state of mind was concerned and that the Government "failed to properly authenticate the text message as having come from [Mr. Cole]" or otherwise "establish a proper foundation for the admission of the text message." Appellants' Reply Br. 2, 4 n.2. We note that any such issues were neither preserved below nor properly presented on appeal. See United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

22

facts set forth in the text message. In essence, Appellants reason that because (a) hearsay is offered to prove the truth of the matter asserted and (b) independent evidence indicates a statement is, in fact, true, then (c) the statement must be hearsay. This simplistic deduction overlooks the critical step of "identifying the actual purpose for which a party . . . introduce[s]" the statement at issue. Gonzales-Flores, 701 F.3d at 117 (emphasis supplied). Ms. McNair's testimony only served to provide the context necessary for the jury to infer the identity of the text message's speaker ("Puffy" = Mike Cole) and subject ("bitch" = Ms. McNair); it did not alter the non-truth-dependent purposes for which the text message was ultimately introduced. Cf. United States v. Lieberman, 637 F.2d 95, 101 (2d Cir. 1980) (noting that "it was proper to receive the [record] for [a] limited non-hearsay purpose, with other evidence admitted from which the jury could infer that the [record] spoke the truth").

For all these reasons, we conclude the district court's decision to admit the text message was neither "arbitrary [nor] irrational." Cone, 714 F.3d at 219 (internal quotation marks and citations omitted). Consequently, the introduction of this evidence does not raise any Confrontation Clause concerns, see Ayala, 601 F.3d at 272, and we need not reach the Government's alternative argument that the text

23

message fell within the co-conspirator exclusion from the rule against hearsay under Federal Rule of Evidence 801(d)(2)(E).

C.

Finally, we address Appellants Carter and Taylor's challenge to the district court's application of the two-level obstruction of justice enhancement contained in U.S.S.G. § 3C1.1. In evaluating whether the district court properly applied this enhancement, we review its legal conclusions de novo, its factual findings for clear error, United States v. Medina-Campo, 714 F.3d 232, 234 (4th Cir. 2013), and any unpreserved arguments for plain error, United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). We will find clear error only if, after reviewing all the evidence, we are "'left with the definite and firm conviction that a mistake has been committed.'" United States v. Harvey, 532 F.3d 326, 336–37 (4th Cir. 2008) (quoting In re Mosko, 515 F.3d 319, 324 (4th Cir. 2008)).

Section 3C1.1 provides for a two-level enhancement of the defendant's base offense level where

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]

24

U.S.S.G. § 3C1.1. The comments further instruct that "providing materially false information to a probation officer in respect to a presentence or other investigation for the court" is a "type[] of conduct to which this enhancement applies." Id. § 3C1.1 cmt. n.4(H). Material information, as used in § 3C1.1, means information "that, if believed, would tend to influence or affect the issue under determination." Id. § 3C1.1 cmt. n.6. In order to qualify for this enhancement, a defendant's obstructive conduct must be "willful" in the sense that he "'consciously act[ed] with the purpose of obstructing justice.'" United States v. Thorson, 633 F.3d 312, 320 (4th Cir. 2011) (alteration in original) (quoting United States v. Romulus, 949 F.2d 713, 717 (4th Cir. 1991)).

1.

Subsequent to the jury trial, Appellants Carter and Taylor met with probation officers, without counsel,[6] to be interviewed in connection with the preparation of their presentence reports ("PSRs"). During these interviews, both Appellants told the probation officers a variation of the same

---

[6] Although the record contains no explanation for the absence of Appellant Carter's counsel, it is clear that Appellant Taylor's counsel, Mr. Reynolds, advised the probation officer that he "did not want to be present" during the interview, and Appellant Taylor, in turn, advised that he had "no problem" proceeding in the absence of counsel. J.A. 1464.

story, i.e., that they had broken into Ms. McNair's home because someone had told them that money and drugs were hidden inside; that no one had brought any weapons to the house because they "did not expect anyone to be home"; and that their intent was to steal the money and drugs, not to kidnap anyone. J.A. 1613, 1629. Based on these statements, the probation officers recommended that the district court apply the obstruction of justice enhancement. In overruling Appellants' objections, the district court found Appellant Carter had "lied to the probation officer" in a deliberate attempt to "minimize[] his own responsibility and . . . the sentence that he faces," id. at 1513, while Appellant Taylor had done the same "with an intent or in an attempt to lessen the responsibility under the [G]uidelines[.]" Id. at 1470.

2.

Appellants Carter and Taylor challenge the obstruction of justice enhancement on two fronts. First, they contend that the district court's reliance on their presentence interviews violated their Fifth Amendment privilege against self-incrimination and their Sixth Amendment right to counsel. Second, they claim that their interview statements "were mere denials of guilt to which the enhancement is not intended to apply." Appellants' Br. 65.

We begin with Appellants' Fifth and Sixth Amendment claims. Because these issues were not raised below, our review is for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). Consequently, Appellants must show (1) there was error; (2) the error was plain; and (3) the error affected their substantial rights. Olano, 507 U.S. at 732. When these conditions are satisfied, we may exercise our discretion to notice the error only if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). Both of Appellants' claims founder on the first prong of this inquiry.

i.

Appellants contend their Fifth Amendment rights were violated during their presentence interviews because they were "not advised in advance . . . that their statements might be used against them." Appellants' Br. 68. Although Appellants acknowledge, as they must, that "Miranda warnings are not required prior to routine presentence interviews," United States v. Hicks, 948 F.2d 877, 885 (4th Cir. 1991), they contend that their interviews were not "routine" in light of the partial mistrial and outstanding 18 U.S.C. § 924(c) charge. By focusing on the specter of a potential re-trial, however, Appellants miss

27

a very basic point –– the issue on appeal is simply whether this evidence can be considered in a <u>sentencing hearing</u>. <u>See, e.g.</u>, <u>United States v. Tucker</u>, 404 U.S. 443, 446 (1972) (A sentencing judge's inquiry is "broad in scope" and "largely unlimited either as to the kind of information he may consider, or the source from which it may come.").

It is well-established in our circuit that a sentencing court may consider "statements obtained in violation of <u>Miranda</u>, if they are otherwise voluntary" and reliable. <u>United States v. Nichols</u>, 438 F.3d 437, 442 (4th Cir. 2006). Consequently, it is largely irrelevant for our purposes whether or not Appellants were entitled to a <u>Miranda</u> warning prior to their presentence interviews; so long as their statements were reliable and voluntary, the sentencing court was free to evaluate them. <u>See</u> <u>id.</u> at 443-44. Here, the record clearly demonstrates that Appellants voluntarily participated in the presentence interviews and voluntarily made the statements at issue. Indeed, Appellants have raised no claim of involuntariness or actual coercion on appeal. As a result, we have little trouble concluding the district court did not err, much less plainly err, by relying on Appellants' voluntary statements in its sentencing determination.

ii.

Appellants' Sixth Amendment claims are similarly unmoored. We have held the right to counsel does not extend to "routine presentence interview[s]" because such interviews are not "critical stage[s] of the criminal proceeding[]." Hicks, 948 F.2d at 885 (citations omitted). Even if, as Appellants contend, Hicks does not govern the presentence interviews at issue here, the record is simply devoid of any indicia that the Government deprived Appellants of their right to counsel. As we have already emphasized, Appellants voluntarily participated in their presentence interviews. See United States v. Tyler, 281 F.3d 84, 96 (3d. Cir. 2002) (finding no Sixth Amendment violation where the defendant "voluntarily participated in the presentence investigation"). Moreover, they have failed to allege or show they were forced to proceed without their counsel's assistance or that their counsel were in any way excluded from the presentence process. See id.; see also United States v. Cortes, 922 F.2d 123, 128 (2d Cir. 1990) (finding no Sixth Amendment violation where counsel was not excluded and defendant was not forced to proceed). Indeed, the available

29

evidence strongly militates in favor of the opposite conclusion.[7] We find no plain error here.

## b.

Having found no constitutional prohibition against the use of Appellants Taylor and Carter's interview statements at sentencing, we turn to the applicability of the Guidelines themselves. Appellants' argument on appeal focuses primarily on the so-called "denial of guilt exception" to the obstruction enhancement, U.S.S.G. § 3C1.1 cmt. n.2, which reads as follows:

> This provision [§ 3C1.1] is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) [or] refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.

Id. In Appellants' view, their statements to the probation officers were simply "denial[s] of guilt" within the meaning of this exception and, as such, cannot form the basis for an obstruction enhancement. Again, we disagree.

---

[7] As we observed supra, Mr. Reynolds actually advised the probation officer that he "did not want to be present" during the interview. J.A. 1464; see also United States v. Saenz, 915 F.2d 1046, 1049 (6th Cir. 1990) ("When a defendant's counsel makes a choice not to attend the presentence interview, the defendant cannot argue on appeal that the government deprived him of his Sixth Amendment right to counsel." (citing United States v. Dickson, 712 F.2d 952, 954 (5th Cir. 1983))).

30

While a defendant who exercises his Fifth Amendment privilege against self-incrimination by denying his guilt or refusing to answer a question is undoubtedly protected from enhancement under U.S.S.G. § 3C1.1, see, e.g., United States v. Lange, 918 F.2d 707, 709 (8th Cir. 1990), Appellants' statements went far beyond a simple denial of guilt. Rather, as the district court found, Appellants concocted a false story and admitted guilt to a lesser crime in a concerted effort to secure a lower sentence.[8] Such behavior is "more than a simple denial of guilt and c[an] be treated as an obstruction of justice." United States v. Johns, 27 F.3d 31, 35 (2d Cir. 1994) (internal quotation marks and citation omitted); see also United States v. Manning, 704 F.3d 584, 587 (9th Cir. 2012) (per curiam) (finding the denial of guilt exception inapplicable where the defendant "didn't just deny having the guns; he concocted a story about what happened to them"); United States v. Gardiner, 955 F.2d 1492, 1500 n.16 (11th Cir. 1992) (finding the denial of guilt exception inapplicable where a defendant "did slightly more than assert innocence; he went further and told the probation officer

---

[8] Appellants have raised no cogent challenge to the factual findings underlying the district court's application of the obstruction of justice enhancement on appeal, and we readily conclude the district court did not clearly err in finding that Appellants Carter and Taylor acted "willfully," U.S.S.G. § 3C1.1, in "provid[ing] materially false information to [their] probation officer[s]." Id. § 3C1.1 cmt. n.4(H).

an alternative version of the events pertinent to this case");

United States v. McKay, 183 F.3d 89, 96 (2d Cir. 1999) (finding the denial of guilt exception inapplicable where defendant "concocted a story that admitted guilt but reversed the roles he and another individual played in a crime"). The district court therefore did not err in applying the obstruction of justice enhancement to their respective sentences.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.