**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2

STEPHEN C. STANKO,

Petitioner - Appellant,

v.

BRYAN P. STIRLING, Director, South Carolina Department of Corrections; LYDELL CHESTNUT, Deputy Warden of Broad River Correctional Secure Facility,

Respondents - Appellees.

No. 22-3

STEPHEN C. STANKO,

Petitioner - Appellant,

v.

BRYAN P. STIRLING, Director, South Carolina Department of Corrections; LYDELL CHESTNUT, Deputy Warden of Broad River Correctional Secure Facility,

Respondents - Appellees.

Appeals from the United States District Court for the District of South Carolina, at Aiken. Richard Mark Gergel, District Judge. (1:19-cv-03257-RMG)

Argued:  March 19, 2024                                    Decided:  July 29, 2024

———————————

Before DIAZ, Chief Judge, and HARRIS and HEYTENS, Circuit Judges.

———————————

Affirmed in part and dismissed in part by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Heytens joined.

———————————

**ARGUED:**  Joseph Perkovich, PHILLIPS BLACK, INC., New York, New York, for Appellant.  James Anthony Mabry, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees.  **ON BRIEF:** E. Charles Grose, Jr., THE GROSE LAW FIRM, LLC, Greenwood, South Carolina; Joseph C. Welling, PHILLIPS BLACK, INC., St. Louis, Missouri, for Appellant.  Alan Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, Melody J. Brown, Senior Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees.

———————————

PAMELA HARRIS, Circuit Judge:

Stephen Stanko appeals the district court's denial of a 28 U.S.C. § 2254 petition challenging one of his two South Carolina capital convictions and sentences. We conclude that none of Stanko's claims can survive review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"): Those claims properly before us on appeal are either procedurally barred under AEDPA or meritless under AEDPA's deferential standard of review. Stanko also seeks review of two docket management decisions made in the district court. We see no merit to one of these complaints and lack jurisdiction to address the other. Accordingly, we affirm the judgment of the district court and dismiss the portion of the appeal over which we have no jurisdiction.

## I.

This capital case winds its way to us after a complex path through the South Carolina and federal courts. Of the voluminous procedural and factual background, we recount only what is important to this appeal.

### A.

#### 1.

Stephen Stanko has twice been convicted of murder and sentenced to death in South Carolina courts. The first death sentence, not directly at issue here, was imposed in Georgetown County for the murder of Stanko's girlfriend, Laura Ling, and the rape and attempted murder of her daughter. *See generally State v. Stanko*, 658 S.E.2d 94 (S.C. 2008). The second – and the one challenged here – comes out of Horry County, for the

3

armed robbery and murder of Stanko's friend Henry Turner. *See generally State v. Stanko*, 741 S.E.2d 708 (S.C. 2013). The Horry County murder occurred shortly after the murder in Georgetown County, as part of a crime spree spanning county lines.

Stanko never seriously contested that he committed the acts charged. Instead, he defended both cases at trial by arguing that an organic brain disorder rendered him not guilty by reason of insanity, *see* S.C. Code Ann. § 17-24-10, or, if guilty, not deserving of a death sentence.

The Georgetown County jury was unconvinced; it convicted Stanko and recommended a death sentence, which the court imposed. Stanko then filed a state action for post-conviction review (a "PCR" action) arguing that his appointed attorney, William Diggs, had provided ineffective assistance of counsel in the Georgetown proceedings, depriving him of his Sixth Amendment right to counsel.

But despite the pending ineffective assistance claim, Stanko insisted that Diggs continue to represent him in Horry County, where trial had yet to begin. Recognizing that questions might be raised by this arrangement, the Horry County trial court and the Georgetown County PCR court held several hearings to ensure that Stanko was aware of and validly waived any potential conflict of interest. Repeatedly – at three separate hearings in Horry County and one in the Georgetown County PCR court – Stanko insisted that he did not "want to lose" Diggs as an attorney because he continued to "believe in" Diggs and because Diggs was "the one who had the test ordered" to discover the brain disorder that anchored Stanko's defense. *Stanko*, 741 S.E.2d at 715.

4

Satisfied that Stanko's waiver of the right to conflict-free assistance of counsel was voluntary, knowing, and intelligent, the Horry County trial court acquiesced and permitted Stanko to move forward with Diggs. At trial, Diggs put on significant evidence – from seven medical experts and two mitigation experts – of Stanko's purported brain disorder and how it affected his conduct and mental health, both in support of his insanity defense and to mitigate his culpability. Like the Georgetown County jury, the Horry County jury was unconvinced: It, too, convicted Stanko and recommended the death penalty, which the trial court imposed.

2.

On direct appeal, the Supreme Court of South Carolina affirmed Stanko's Horry County conviction and sentence. *Stanko*, 741 S.E.2d at 727. As relevant here, the court rejected the argument that the trial court erred in accepting Stanko's waiver of any conflict of interest. Stanko, the court determined, "was fully informed" of the potential conflict and executed "a valid waiver." *Id.* at 717 (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).[1]

---

[1] The court also concluded that Stanko had failed to preserve the claim because he "did not object to the appointment of Diggs as counsel." *Id.* But the court went on to consider the claim's merits, as noted above – as did the subsequent state PCR court, and the federal district court after that. J.A. 7596. Like the district court, we note the circularity of requiring a defendant who is by hypothesis represented by counsel with an unwaivable conflict to object to that representation through said counsel. *Id.* Regardless, we agree with the district court that the prudent course is to follow the lead of the state courts and address the issue on the merits. *See Lawrence v. Branker*, 517 F.3d 700, 714-15 (4th Cir. 2008) (considering the merits of a habeas claim where the state court held the claim both procedurally defaulted and meritless).

5

**B.**

We turn now to Stanko's pursuit of post-conviction relief in state court. In his PCR petition, Stanko raised two groups of claims relevant here, both alleging the denial of his Sixth Amendment right to counsel.

The first we alluded to above: Stanko argued that Diggs labored under a conflict of interest, given Stanko's pending ineffective assistance claim, and that his purported waiver of this conflict was not sufficiently informed. This time, instead of arguing that the Horry County trial court erred in accepting his waiver, Stanko argued that Diggs's failure to better advise him on his waiver and to raise the conflict at trial constituted ineffective assistance of counsel. The PCR court disagreed. Even assuming there was a conflict of interest, it held, "that conflict was knowingly, voluntarily, and effectively waived by Stanko" at the many pre-trial hearings during which Stanko was questioned and advised about Diggs's continued representation. J.A. 5321.

Second, Stanko argued that he was denied the effective assistance of counsel at the sentencing phase of his trial. According to Stanko, his lawyers unreasonably told the jury that his family disliked him and did not attend his trial, and further dehumanized him with expert testimony referring to him as a "psychopath." In addition, Stanko argued, Diggs failed to adequately investigate and present mitigating evidence related to his background and mental health.

In two lengthy opinions, the PCR court rejected these claims, as well. The court pointed to Diggs's testimony that he made a "conscious decision" to call attention to Stanko's estrangement from his family, both as evidence that Stanko was unable to

6

function normally – mitigating his culpability – and to generate sympathy for Stanko. J.A. 5325; *see also* J.A. 5464-65. That strategic judgment, the court concluded, was not constitutionally unreasonable. Likewise, expert references to "psychopathy" were used "in a reasonably strategic manner," to corroborate Stanko's insanity defense and to mitigate his culpability by showing his inability to control his actions. J.A. 5465. The court painstakingly reviewed the testimony of the "network of able expert witnesses" engaged by the defense to explain Stanko's neurological deficits and thus rationalize Stanko's conduct for the jury. J.A. 5470; *see* J.A. 5465-70. In that context, the court determined, expert references to psychopathy were part of an "affirmative defense of insanity and [a] related mitigation strategy," within the bounds of professional norms. J.A. 5470.

Nor, the court concluded, had Diggs shirked his responsibility to pursue and present mitigation evidence. To the contrary, Diggs hired a mitigation investigator and a fact investigator, who conducted interviews of Stanko's family and other possible witnesses and obtained school, medical and prison records. And from that investigation came extensive testimony in mitigation: from a social worker who testified to Stanko's sometimes troubled and dysfunctional family history; from teachers, neighbors, and friends who testified that Stanko nevertheless was a well-liked, polite, and academically successful boy through middle school and until an accident in high school that may have caused his brain disorder; from correctional officers who testified that Stanko was a model inmate; and from an expert who testified to Stanko's antisocial personality disorder, a mitigating factor under South Carolina law. J.A. 5472-75. Stanko's primary complaint, the court explained, was that this extensive mitigation defense relied mostly on the investigation

7

previously done for the Georgetown County trial, instead of "a brand new investigation" for Horry County alone.  J.A. 5470.  But the court deemed that allocation of resources constitutionally reasonable, given that the two murders were committed in quick succession, with "the same social and psychological history" relevant to both.  J.A. 5472.

Accordingly, the PCR court denied relief on these claims, as well as others not relevant to this appeal.  Stanko then petitioned the Supreme Court of South Carolina for certiorari review of the PCR court's decision.  That court denied certiorari review, ending Stanko's state court proceedings in this case.

## C.

### 1.

That brings us finally to the federal habeas proceedings that give rise to this appeal. Stanko petitioned the South Carolina district court for habeas relief under 28 U.S.C. § 2254, presenting over a dozen claims.  As before, we will discuss here only those relevant on appeal.

First, Stanko again raised a series of Sixth Amendment claims stemming from Diggs's alleged conflict of interest.  Diggs, Stanko argued, had rendered ineffective assistance by inadequately advising him of the implications of his purported waiver.  And the trial court also had deprived him of his right to conflict-free counsel by failing to assure that his waiver was knowing and informed.  Finally, and for the first time, Stanko contended that Diggs's conflict was so severe that it was non-waivable – that the trial court, that is, had no discretion to accept his waiver, no matter how well informed.

8

Second, Stanko again argued he was deprived of the effective assistance of counsel at the penalty phase of his trial. Here, Stanko mostly repeated the claims he had raised before the PCR court, focusing on Diggs's presentation of evidence that portrayed him as an unlikeable "psychopath" and on Diggs's failure to conduct a new mitigation investigation for the Horry County trial.

Stanko urged the district court to review these claims de novo, without the AEDPA deference due a state court adjudication on the merits. *See* 28 U.S.C. § 2254(d). The state PCR court had denied some (but far from all) of Stanko's many requests for funding for various investigative purposes. According to Stanko, that made the record before the PCR court materially incomplete – which meant, under our case law, that the PCR court had not truly "adjudicated" his claims "on the merits" and thus lost its entitlement to deference under § 2254(d). *See Gordon v. Braxton*, 780 F.3d 196, 202 (4th Cir. 2015).

The district court rejected Stanko's claims and denied him relief. *See Stanko v. Stirling*, No. 1:19-03257-RMG (D.S.C. Mar. 24, 2022), *reproduced at* J.A. 7582-7614.[2] First, the district court established that its review of Stanko's claims would proceed under the "highly deferential" § 2254(d) standard, applied to "the record developed by the state court." J.A. 7594. Contrary to Stanko's argument, the court held, the record before the PCR court was not materially incomplete. Unlike the cases to which Stanko pointed, the PCR court here had not unreasonably refused to develop the necessary factual record.

---

[2] Because the district court's unpublished decision is not available via a publicly accessible legal database, we cite to the version contained in the joint appendix on appeal.

9

Instead, it had conducted an extensive two-day hearing, with direct and cross examination of Stanko's lawyers, two mitigation experts, and a fact investigator. It did so after approving multiple requests for funding for investigations, and Stanko had made no showing that the PCR court's denial of other requests – each accompanied by a reasoned explanation – deprived him of material evidence. Because the PCR court's decision rested on a full and fair hearing and a materially complete record, the court concluded, Stanko was entitled to relief only if that decision could be deemed "unreasonable" under AEDPA's exacting standards. *See* 28 U.S.C. § 2254(d)(1), (2).

Under that deferential standard, the court held, Stanko could not succeed on his Sixth Amendment conflict claims. The court agreed that the "unusual circumstances" of Stanko's representation by Diggs – against whom Stanko had filed a claim of ineffective assistance in his Georgetown County trial – "certainly merited a careful inquiry by the Horry County trial court." J.A. 7596. But there had been just such an inquiry, the court concluded, reviewing the extensive hearings and colloquies confirming Stanko's waiver. Under those circumstances, the court concluded, it could not be said that the state court rulings on the validity of the waiver were "unreasonable" – or even that they "remotely approach[ed]" that standard. J.A. 7599. Instead, those determinations were "reasonable and in accord with [Stanko's] repeated, even urgent, requests that he be allowed to continue with Diggs' representation." *Id.*

The district court also became the first court to address – and reject – Stanko's claim that his conflict with Diggs could not be waived. The court recognized that there are cases in which prejudice stemming from a conflict may be so severe that the conflict is non-

10

waivable. *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159-60 (1988)). But the purported conflict here, the court held – stemming from "alleged damage to Diggs['s] reputation from having [Stanko] file a claim of ineffective assistance of counsel against him" – did not fall close to that line. J.A. 7598. Such ineffective assistance motions are "made routinely by criminal defendants," the court reasoned, and there is no reason to think they are so "professionally devastating" to the attorney's reputation that the attorney will be driven to "act against a client's best interests." *Id.* And on the other side of the coin, the district court cautioned, was Stanko's interest in continuing with Diggs as his counsel of choice, as he repeatedly requested. Under all the circumstances, the court concluded, the Horry County trial court acted well within its discretion when it accepted Stanko's waiver and allowed Diggs to represent him.

The district court dealt more briefly with Stanko's second set of Sixth Amendment claims, which alleged that he had been denied effective assistance of counsel at the penalty phase of his trial. Those claims, the district court held, were procedurally barred. *See* 28 U.S.C. § 2254(b)(1)(A). They had been submitted to and adjudicated by the state PCR court, to be sure. But AEDPA exhaustion also required Stanko to "fairly present" his claims to the Supreme Court of South Carolina in his petition for certiorari, and this, the district court held, Stanko had failed to do. J.A. 7611 (quoting *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004)).

Finding Stanko's claims either meritless under AEDPA's deferential standard or defaulted, the district court granted the state's motion for summary judgment, denied

11

Stanko's partial motion for summary judgment, and denied Stanko a certificate of appealability.

2.

Ordinarily we could stop there in our description of the federal court proceedings, but this case has a few more steps to go. After the district court ruled on his habeas petition, Stanko moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. At issue again, broadly speaking, was funding for specialist services – but this time, funding Stanko had sought from the federal district court, not the state PCR court. The district court had approved funding for services as "reasonably necessary" under 18 U.S.C. § 3599(f) – specifically, for high-resolution brain images and further analysis of Stanko's brain anomalies. The problem, Stanko argued in his motion, was that the district court had then granted summary judgment against him prematurely, without waiting for the results. In response, the state moved to unseal Stanko's *ex parte* funding requests: Without information about the purported relevance of the brain imaging, the state contended, it could not address the merits of Stanko's motion.

The district court granted the state's motion to unseal, agreeing that Stanko's motion had put at issue the contents of the *ex parte* funding requests. And after receiving the state's response, it denied Stanko's Rule 59(e) motion. First, it noted Stanko's unexplained delay in obtaining the brain scans, the results of which were still outstanding. And in any event, it concluded, the imaging results could have no bearing on Stanko's claim that his waiver was invalid, as Stanko hypothesized. Because that claim was adjudicated in state court, AEDPA barred the district court from considering new evidence beyond the state

12

court record – even if, as the Supreme Court had just held, Stanko raised a so-called *Martinez* claim and argued that his state post-conviction counsel provided constitutionally ineffective assistance.  J.A. 7847 (citing *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022)).

Before he noted his timely appeal from the district court's final judgment, Stanko made several unsuccessful attempts to keep his *ex parte* funding requests private.  First, he moved the district court for a stay of the unsealing order, which the district court denied. He then took an interlocutory appeal to this court and asked us to stay the unsealing order. We denied the stay and consolidated Stanko's interlocutory appeal with his appeal from the final judgment, which by then had been filed.

After Stanko filed an opening brief raising over a dozen issues, we granted a certificate of appealability limited to four, tracking the Sixth Amendment issues discussed above.  First are the conflict questions:  whether Stanko was deprived of his right to conflict-free counsel when he was permitted to waive Diggs's potential conflict, either because the conflict was not waivable or because Stanko was not adequately informed. Second are the questions related to Diggs's performance at the penalty phase of trial: whether Diggs pursued an unreasonable strategy of depicting Stanko as a psychologically disordered person disavowed by his family or failed to adequately investigate and present other mitigating evidence.

## II.

We begin with the appeal from the district court's denial of Stanko's § 2254 petition. We review de novo the district court's judgment.  *Sigmon v. Stirling*, 956 F.3d 183, 191

13

(4th Cir. 2020). And like the district court, we are constrained by AEDPA's highly deferential standard for review of the underlying state court decisions in Stanko's case. Stanko may prevail on a claim "adjudicated on the merits" in state court proceedings only if a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Stanko argues on appeal, as before the district court, that § 2254(d)'s deferential standard should not apply to the decision of the state PCR court because that court did not "adjudicate" his claims "on the merits." Like the district court, we disagree. It is indeed well established in our circuit, as Stanko contends, that a claim is not adjudicated on the merits for purposes of § 2254(d) if it is decided on a "materially incomplete record" because a state PCR court has "unreasonably refused to permit" necessary factual development, *Valentino v. Clarke*, 972 F.3d 560, 577 (4th Cir. 2020) (cleaned up) – either by refusing to consider, without explanation, critical evidence, *see id.*, or by unreasonably refusing to hold a hearing to resolve a critical factual dispute, *see Gordon*, 780 F.3d at 203. But that is a "rare scenario," and Stanko cannot show that his case falls within it. *See Valentino*, 972 F.3d at 576 (explaining that petitioner bears the burden of overcoming a "strong but rebuttable presumption" that claim presented to and decided by state court was "adjudicated on the merits" for purposes of § 2254(d)).

As the district court explained, Stanko's case looks nothing like the handful in which we have evaluated claims de novo because "a state court shun[ned]" its responsibility to

14

consider a materially complete record. *Id.* Here, the state PCR court held a two-day hearing with multiple witnesses, including Diggs. It granted substantial funding to aid Stanko's investigation. The only purported shortcoming Stanko can identify is the PCR court's denial of some of his additional funding requests – each time, as the district court observed, with a reasoned explanation going to the specificity or relevance of the request. That is not enough to render the extensive factual record before this PCR court "unreasonably truncated," *Gordon*, 780 F.3d at 202, or "materially incomplete" within the meaning of our case law, *Valentino*, 972 F.3d at 577-79. Indeed, if it were otherwise, every funding dispute in a state PCR court could turn into an exception to § 2254(d), leaving that critical provision with little to do. We therefore give § 2254(d) its ordinary application in this case.

## A.

We begin with Stanko's conflict claims. We granted a certificate of appealability to consider whether Stanko was deprived of his Sixth Amendment right to counsel when the court accepted his waiver of Diggs's potential conflict, either because the conflict was non-waivable or because it was not properly waived. We conclude that the purported conflict in this case was waivable, and that the state courts did not unreasonably apply clearly established federal law as determined by the Supreme Court in finding that Stanko's waiver was valid and adequately informed. Accordingly, we affirm the district court's denial of relief on these claims.[3]

---

[3] Stanko has raised his Sixth Amendment conflict claim through two different lenses, arguing both that the *trial court* violated his Sixth Amendment right to counsel by

1.

A criminal defendant has both the Sixth Amendment right to conflict-free counsel, *see Wood v. Georgia*, 450 U.S. 261, 271 (1981), and the ability to waive that right, *see Wilson v. Moore*, 178 F.3d 266, 279 (4th Cir. 1999). Stanko argues that this is the exceptional case where the prejudice arising from a conflict is so great that the conflict cannot be waived, eclipsing what normally would be his ability to waive the conflict and proceed with Diggs. We disagree.[4]

An initial clarification is in order. We, like Stanko and some of our case law, use the term "unwaivable" or "non-waivable" to describe this narrow class of conflicts. *See, e.g.*, *United States v. Urutyan*, 564 F.3d 679, 687 (4th Cir. 2009). But that is really a kind

---

accepting an invalid waiver and that *Diggs* provided ineffective assistance in failing to adequately advise him on his waiver. However it is formulated, this claim is foreclosed by our holding, explained above, as to the propriety of Stanko's waiver. Accordingly, we treat the two variations on Stanko's conflict claim together, and do not further consider whether Stanko's claim that Diggs provided ineffective assistance of counsel in connection with his waiver could otherwise satisfy the *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668 (1984).

[4] A question arises at the outset as to whether § 2254(d) restricts our review of this claim – not because (as Stanko argues) the state courts adjudicated it on an incomplete record, but because they may not have adjudicated it at all. Both the Supreme Court of South Carolina and the state PCR court decided that Stanko validly – voluntarily, knowingly, and intelligently – waived any potential conflict. Neither considered expressly whether the conflict was waivable in the first place, likely because Stanko did not expressly put that question before them. That could mean the issue is defaulted – except that the state has forfeited any procedural default defense by failing to raise it. *See Plymail v. Mirandy*, 8 F.4th 308, 316 (4th Cir. 2021). If the question was never put to or decided by the state courts, then, we would consider it de novo. *Id.* On the other hand, it may be that whether the putative conflict here was waivable was logically subsumed within the waiver-in-fact question Stanko presented and the state courts decided – in which case we would apply § 2254(d)'s deferential standard. We need not resolve that question: Stanko cannot prevail whether we undertake de novo or deferential review.

of shorthand.  Nothing limits a defendant's right to waive *his* right to conflict-free counsel; indeed, it is buttressed by his right to counsel of his choice.  *See, e.g.*, *Wheat*, 486 U.S. at 164.  The defendant, however, is not the only stakeholder here.  Courts have their own "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," and *that* interest can justify, in rare circumstances, insisting on conflict-free counsel even when a defendant would prefer to proceed with conflicted counsel.  *United States v. Caldwell*, 7 F.4th 191, 203 (4th Cir. 2021) (quoting *Wheat*, 486 U.S. at 160).  When we talk about a non-waivable conflict, in other words, what we really are asking is whether a conflict is so severe and obviously prejudicial that a court's interest in fairness (and its appearance) outweighs the defendant's interest in choosing his lawyer – giving the court discretion to reject a waiver, *e.g. United States v. Fowler*, 491 F. App'x 453, 457 (4th Cir. 2012) (citing *United States v. Basham*, 561 F.3d 302, 323 (4th Cir. 2009)), or, in the most extreme cases, leaving the court without discretion to accept one, *e.g. Hoffman v. Leeke*, 903 F.2d 280, 288 (4th Cir. 1990).  Stanko argues, as he must to prevail, that his conflict is of the most extreme type, so that the Horry County trial court lacked discretion to accept even a fully informed waiver of his right to conflict-free counsel.

In our view, like that of the district court, the purported conflict in Stanko's case plainly does not belong in this exceptional category.  We have not had occasion to specify the precise "circumstances in which a [trial] court must override a defendant's otherwise valid conflict of interest waiver," *United States v. Edelen*, 561 F. App'x 226, 232 (4th Cir. 2014), and we need not do so here.  It is enough to observe, first, that the bar for such a

17

non-waivable conflict is set extremely high, with other courts describing a conflict "so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation," *United States v. Lussier*, 71 F.3d 456, 461 (2d Cir. 1995), or "so severe as to render a trial inherently unfair," *United States v. Vaquero*, 997 F.2d 78, 90 (5th Cir. 1993). And second, the scope of a trial court's discretion in this area is correspondingly broad. As the district court recognized, a court faced with a defendant who wishes to proceed with conflicted counsel is "whip-sawed by assertions of error no matter which way [it] rule[s]": an accusation of impermissible conflict on the one hand and of the deprivation of the right to counsel of choice on the other. *Wheat*, 486 U.S. at 161; *see also United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996).[5] Recognizing these competing interests, we accord trial courts very "substantial latitude" in accepting and refusing waivers of conflicts of interest. *Edelen*, 561 F. App'x at 232 (quoting *Wheat*, 486 U.S. at 163); *see also Hoffman*, 903 F.2d at 288.

Under this standard, and assuming (for now) that Stanko's waiver of conflict-free counsel was otherwise valid, the state trial court did not abuse its substantial discretion when it accepted Stanko's waiver and allowed him to proceed with Diggs. As the district

---

[5] The district court explained it like this: "[T]here is little doubt that had the state trial court required the removal of Diggs as counsel over the vigorous objections of [Stanko], the motion before the Court would be that [Stanko] had been denied his Sixth Amendment right to effective counsel because he had exercised his right to seek post-conviction relief in the Georgetown County case" – that is, deprived of his counsel of choice because he filed an ineffective assistance claim against Diggs in Georgetown County. J.A. 7599. "Surely, the law cannot be that whatever decision the state trial court made, [Stanko] would have been denied his constitutional right to effective counsel." *Id.*

18

court aptly explained, *see* J.A. 7598, there is no reason to think that Stanko's ineffective assistance claim in Georgetown County so tarnished Diggs's reputation that Diggs would be moved to undermine Stanko's defense at the Horry County trial. Any potential conflict here was not so "egregious," *Lussier*, 71 F.3d at 46, that a court would be bound to reject a fully informed waiver to protect its "independent interest" in assuring the appearance of fairness. *See Wheat*, 486 U.S. at 160.[6]

Nor are we persuaded by Stanko's alternative formulation of the conflict: that Diggs would be reluctant to adjust his trial strategy for the Horry County trial because any change from his (unsuccessful) Georgetown County approach would be taken as an indication that his Georgetown County performance was indeed constitutionally deficient. To be clear, we do not doubt that a lawyer's self-interest – as opposed to the interest of a second client, as in most of these cases – can generate a cognizable conflict. The lawyer himself, that is, can be one of the "two masters" that the Sixth Amendment forbids him from serving simultaneously. *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980) (internal quotation marks omitted); *see, e.g., United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992) (finding actual conflict where lawyer "chose a course of action which furthered his interest and

---

[6] We discuss separately, in connection with the validity of Stanko's waiver, the extensive steps taken by the trial court to confirm the waiver and Stanko's repeated assurances, on the record, that he indeed wished to continue with Diggs as counsel. But there is some overlap here, because those on-the-record proceedings also would have lessened any perception of unfairness that might otherwise have implicated the court's independent duty to reject a waiver. *Cf. Hoffman*, 903 F.2d at 288 (finding conflict non-waivable where "a member of the public would be shocked to observe" the trial proceedings).

19

diminished" his client's).  But here, the second master was not all that demanding; as the district court pointed out, ineffective assistance allegations are sufficiently routine that Diggs was unlikely to be overly concerned about Stanko's claim against him.  And even if he were, it is far from obvious that strategic adjustments at the second trial would be seen as evidence of ineffective assistance at the first – and not just a sign of a thoughtful lawyer willing to adapt.  On this theory, too, the potential conflict presented no risk of prejudice so "severe," *Vaquero*, 997 F.2d at 90, as to take it outside the mainstream of conflict cases.

Moreover, we have here a compelling example of a trial court forced to reconcile competing interests.  Stanko was set on keeping Diggs as counsel – so set that he suggested to the trial court that he would rather drop his ineffective assistance claim in Georgetown County than lose Diggs's services in Horry County.  Stanko, that is, cared deeply enough about retaining his lawyer that he threatened to eliminate the potential conflict himself, by forfeiting claims in ongoing post-conviction litigation in a capital case.  Under all the circumstances here, the trial court acted well within its considerable discretion in respecting Stanko's waiver.

2.

Even if the putative conflict in this case was waivable, Stanko insists, he did not in fact waive it.  The Supreme Court of South Carolina held otherwise, finding that Stanko was "fully informed" of any potential conflict and executed "a valid waiver." *Stanko*, 741 S.E.2d at 717 (holding that trial court did not err in accepting waiver).[7]  We have no

---

[7] The state PCR court reached the same conclusion in addressing Stanko's related claim that Diggs provided ineffective assistance by failing to properly advise him as to his

occasion to consider whether we would reach the same conclusion as a matter of first principle. Under AEDPA, Stanko can prevail on this ground only if the state supreme court's decision was an "unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) (explaining that § 2254(d)(1) permits relief only where state court errs "beyond any possibility for fairminded disagreement"). We agree with the district court that it was not.

As the state court recognized, the Supreme Court of the United States has established a standard for the waiver of constitutional rights, requiring that such waivers be not only voluntary but also "intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748; *see* 741 S.E.2d at 717 (citing *Brady*). In short, the defendant must "voluntarily, knowingly and intelligently" waive his right to conflict-free counsel. *Hoffman*, 903 F.2d at 288. That much, we have explained, is "well-settled." *Id.* But beyond that, the Supreme Court has not gone; there is no Supreme Court precedent "embroider[ing]" *Brady*'s general rule or spelling out the requirements for a conflict-waiver colloquy. *See McCamey v. Epps*, 658 F.3d 491, 500 (5th Cir. 2011); *cf. Horner v. Nines*, 995 F.3d 185, 202 (4th Cir. 2021) (making similar observation in the context of waiving the right to trial by jury). So for purposes of this AEDPA case, the only question is whether the Supreme Court of South

---

waiver. J.A. 5451-52. As we have noted, whether the issue is couched in terms of trial court error or ineffective assistance by Diggs, the bottom-line question – whether Stanko executed a valid and adequately informed waiver – is the same.

21

Carolina unreasonably applied the clearly established rule of *Brady* – that a waiver be voluntary, knowing and intelligent – to the facts before it, leaving no room for reasoned disagreement. *See* 28 U.S.C. § 2254(d)(1); *Renico v. Lett*, 559 U.S. 766, 776 (2010).

We alluded above to the inquiries made at four separate hearings into the potential conflict and Stanko's waiver. The details were spelled out by the Supreme Court of South Carolina across three pages of its published decision, *see* 741 S.E.2d at 715-17, and we offer here only some illustrative examples of Stanko's assurances that he understood the dimensions of the potential conflict and insistence that he nevertheless wished to proceed with Diggs as counsel.

At the first Horry County hearing, called to determine Stanko's representation, Stanko "express[ed] his satisfaction with Diggs's efforts in the prior trial and request[ed] Diggs represent him a second time." *Id.* at 715. Stanko reassured the court that he was "familiar with the law" and "would not raise any kind of argument concerning" Diggs's continued representation, and he emphasized that he "would greatly appreciate" Diggs's appointment. *Id.* The issue then arose in the Georgetown County PCR court reviewing Stanko's ineffective assistance claim against Diggs. There, Stanko "explained his desire to proceed with a PCR application against Diggs, but at the same time retain his representation" in Horry County. *Id.* It is worth quoting part of Stanko's statement in court, describing the "conundrum" he faced and why he nevertheless wished to go forward with Diggs:

> [J]ust because I feel [Diggs] may have been ineffective in the first case does not mean that he'll make those same ineffective mistakes in the second; because he's learned from them, or may see them differently. So my

22

> conundrum is I don't want to lose him; because I believe in him. He knows my case. He's the one who had the test ordered and found out everything that was wrong with my medial front lobe. I don't want to lose him.

*Id.*

The next two hearings, back before the Horry County trial court, were called specifically to address Diggs's potential conflict. At the first of these, the trial court explained to Stanko that the conflict could be "downright" disqualifying. *Id.* But Stanko held his ground, reiterating that he continued to "trust and believe in [Diggs] and his efforts" and expressing his confidence that his PCR claim against Diggs would have "no effect on [the Horry County] case." *Id.* at 715-16. It was at this hearing that Stanko suggested, as noted above, that he would be willing to "waive" his IAC claim against Diggs in Georgetown County to keep his representation in Horry County – an offer the trial court was quick to decline. *Id.* at 716 ("No sir. I'm not asking you to do that."). Diggs also spoke, assuring the court that he saw no conflict in his continued representation of Stanko. *Id.*

Finally, after the state moved to disqualify Diggs on conflict grounds, the Horry County court held yet another hearing. Stanko explained that he had conferred with his PCR attorneys in Georgetown County and continued to want Diggs to represent him. *Id.* The substance of the Georgetown County ineffective assistance claim, Stanko went on, had "nothing to do" with issues that would arise in Horry County; instead, his PCR claim against Diggs focused on "trial situations" that "should have been objected to." *Id.* Diggs also spoke again, reiterating that "he did not feel the PCR application had impacted his relationship with [Stanko], his ability to communicate with him, or his ability to effectively

23

represent him in any way." *Id.* And Stanko agreed: In a colloquy with the trial court, he affirmed that he continued to desire Diggs's representation, that he had "free and open communication" with Diggs "despite" the pending PCR application, and that he saw no issues that "would create a conflict or any argument or [] cause any communicative problems." *Id.*

On this record, we cannot say that the state supreme court unreasonably applied the *Brady* standard in finding that Stanko executed "a knowing and intelligent waiver of any possible conflict." *Id.* at 717. Again, the United States Supreme Court has not established a specific colloquy required before a defendant may validly waive his right to conflict-free counsel and proceed with counsel of choice. But here, as the district court observed, the trial court undertook a "careful inquiry" into the potential conflict, J.A. 7596, extensively questioning Stanko to confirm that his request to keep Diggs as counsel was "conscious and well informed," J.A. 7600. The trial court hearing transcripts are reasonably read as showing that Stanko well understood the source of the potential conflict and its possible implications for his relationship with Diggs and for Diggs's efforts in the Horry County trial – but nevertheless fervently desired to continue with Diggs as counsel, given Diggs's "expertise, understanding of the defense, and personal devotion to the case." J.A. 7598. Like the district court, we think this is enough to put the decision of the state supreme court well within the broad range of AEDPA deference.

Stanko's arguments to the contrary are unavailing. He first contends that his waiver was insufficiently informed because he was unaware of a "relevant circumstance": Evidence later emerged, Stanko says, that Diggs was struggling financially at the time of

24

the Horry County trial and was ultimately sanctioned for mishandling client funds, all of which could have given him a self-interested reason to stay on as Stanko's lawyer. But neither that evidence nor that argument was properly presented to the state courts, which means, as the state argues, that it is procedurally defaulted. Our review under AEDPA is limited to the "record that was before the state court," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and Stanko has made no effort to overcome this bar.[8]

Stanko also attempts to cast doubt on his waiver's validity by pointing out that the trial court did not appoint him separate "conflict" counsel to advise him on the wisdom of proceeding with Diggs. We do not doubt that the appointment of conflict counsel can be helpful in assuring that a defendant's waiver is voluntary and fully informed. But the Supreme Court of the United States has never established a rule requiring conflict counsel, as would be necessary for relief on this ground under § 2254(d)(1), and indeed, our own court has approved waivers of conflict-free counsel in the absence of independent counsel, *see Gilbert v. Moore*, 134 F.3d 642, 653 (4th Cir. 1998) (en banc). Moreover, the Supreme Court has stated in analogous contexts that the "decision to waive [the right to counsel] need not itself be counseled." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *Michigan v. Harvey*, 494 U.S. 344, 352-53 (1990)). And in any event, the record before the Supreme Court of South Carolina showed that Stanko *did* consult with independent

---

[8] Though this is dispositive, we do not want to leave the impression that Stanko's argument otherwise would be successful. On that we offer no opinion. But we do note that the district court, in rejecting a closely related ineffective assistance claim against Diggs, found no record support for any alleged connection between Diggs's representation of Stanko in Horry County and his subsequent misuse of client funds. J.A. 7600.

25

counsel, in the form of his PCR lawyers from Georgetown County – lawyers with no personal stake in whether Diggs remained on the case in Horry County. *See* 741 S.E.2d at 716 (describing Stanko's statement before the trial court that "he had the opportunity to confer with his PCR attorneys, but [] nothing had changed regarding his desire to retain Diggs").

In sum, we agree with the district court as to the validity of Stanko's waiver of conflict-free counsel. The state court's determination that Stanko "was fully informed of [any] conflict," and executed a "knowing and intelligent waiver," 741 S.E.2d at 717, was not an unreasonable application of the waiver standard established by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). For that reason, it cannot be the basis for relief under AEDPA.

**B.**

Like the district court, we may deal more briefly with the second group of Sixth Amendment claims on which we granted a certificate of appealability. Those claims involve more traditional ineffective assistance arguments under *Strickland v. Washington*, 466 U.S. 668, 687 (1984): that Diggs performed deficiently at Stanko's capital sentencing, both by failing to adequately investigate and present mitigating evidence and by unreasonably eliciting testimony that Stanko was a "psychopath" abandoned by his family; and that his objectively unreasonable representation prejudiced Stanko's effort to avoid a death sentence. By way of reminder, these are the claims discussed at length and rejected on the merits by the state PCR court, as earlier described.

26

The district court, on the other hand, did not review the merits of Stanko's *Strickland* claims. Instead, it agreed with the state that the claims were procedurally barred. To exhaust his state remedies under AEDPA, the district court explained, it was not enough that Stanko presented his *Strickland* claims to the state PCR court; he also was required to "fairly present" those claims – both the "operative facts" and the "controlling legal principles" – to the Supreme Court of South Carolina in his petition for certiorari. J.A. 7611 (quoting *Longworth*, 377 F.3d at 448). The district court made a "comparison" of Stanko's federal habeas claims and those in his certiorari petition and concluded that the *Strickland* claims were not "fairly present[ed]" to the state's highest court. *Id.*

We have no occasion to review that assessment, because Stanko does not challenge it on appeal. Instead, Stanko argues that he may be able to overcome the procedural default via the equitable exception recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012). But Stanko never explains exactly how this would work, and we see no path. As our court has explained, *Martinez* contemplates a "narrow exception" to the procedural-default bar when counsel's failure to raise an issue in "state initial-review collateral proceeding[s]" means that "no state court will hear the prisoner's claims." *Vandross v. Stirling*, 986 F.3d 442, 450 (4th Cir. 2021) (internal quotation marks omitted). But here, post-conviction counsel *did* raise the *Strickland* claims at issue in "initial-review collateral proceedings," and those claims *were* addressed – and thoroughly so – "by the state habeas trial court." *See Martinez*, 566 U.S. at 10. What Stanko is gesturing at is deficient performance by his post-conviction counsel on *appeal* from the state PCR court to the state supreme court, and *Martinez* simply has nothing to say about such circumstances. *Mahdi v. Stirling*, 20 F.4th

27

846, 893 (4th Cir. 2021) (explaining that *Martinez* "does *not* apply to claims of [ineffective assistance] by PCR appellate counsel"). In short, and contrary to the only argument Stanko makes in this appeal, *Martinez* offers no defense to the procedural default identified by the district court.[9] For that reason, we affirm the district court's denial of habeas relief on Stanko's *Strickland* claims.

## III.

Finally, we turn to two issues arising from Stanko's Rule 59(e) motion for reconsideration. First, Stanko argues that the district court abused its discretion when it unsealed his *ex parte* filings requesting funds for specialist services. Second, Stanko argues that the district court should have granted his Rule 59(e) motion, revisiting its decision to adjudicate his petition without waiting for the results of brain imaging it had authorized. As we explain below, we see no merit in the first argument and lack jurisdiction to address the second.

## A.

The unsealing issue, recall, arose when the state, in order to respond to Stanko's Rule 59(e) motion, sought and obtained access to Stanko's *ex parte* requests for funding for brain imaging and related specialist services. Stanko pursued an interlocutory appeal

---

[9] There is no need to belabor the point, but we note briefly a second reason why Stanko could not prevail under *Martinez*: As Stanko concedes, he could make out a claim of ineffective assistance of post-conviction counsel only with the aid of evidence outside the state-court record – and the Supreme Court held in *Shinn*, 596 U.S. at 389, that this is not permitted. *See Stokes v. Stirling*, 64 F.4th 131, 136 (4th Cir. 2023).

in this court.  Because Stanko's two appeals – from the unsealing order and then from the final judgment denying habeas relief – came to us in quick succession, we consolidated them.  Meanwhile, we denied Stanko's motion to stay the unsealing order pending appeal.

From this procedural morass arise three points of contention:  appealability, mootness, and the merits.  We take them in turn.

1.

Because of the posture from which Stanko first took his appeal, much of the parties' briefing is devoted to the permissibility of an interlocutory appeal of an unsealing order.  As Stanko argues, an order unsealing district court documents generally is treated as an appealable collateral order.  *See United States v. Doe*, 962 F.3d 139, 143 (4th Cir. 2020).  But we need not bear down on that issue here.  We have already declined to consider the unsealing question on an interlocutory basis, opting instead to consolidate Stanko's appeal of the unsealing order with his appeal from the district court's final judgment.  Whatever its original status, in other words, the appeal from the unsealing order is no longer interlocutory.  *See Kelly v. Town of Abingdon*, 90 F.4th 158, 165 n.3 (4th Cir. 2024).  And because limitations on interlocutory appeals "go[] to the timing, not the availability, of review," *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 222 (4th Cir. 2019), review is now available regardless of whether it could have been had earlier.

2.

Nor, contrary to the state's second argument, is Stanko's appeal now moot.  The state argues, in essence, that the horse is already out of the barn:  Once we denied an emergency stay, Stanko's funding requests were unsealed, so Stanko has already lost any

29

privacy interest and there is nothing we can do to remedy that loss now. Put together with the state's argument on appealability, the state's position goes something like this: When the issue was live, Stanko's appeal was interlocutory and therefore unappealable; and now that it is appealable, it is moot.

The district court agreed with the state as to mootness, J.A. 7725, a determination we review de novo, *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). In our view, Stanko has the better of this argument. A party claiming mootness bears the heavy burden to show that "it is impossible for a court to grant any effectual relief whatever to the prevailing party," *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (internal quotation marks omitted), and the state cannot carry that burden here.

It is not the case, as the state suggests, that the disclosure of documents necessarily moots a dispute over whether those documents should be disclosed. The Supreme Court held as much in *Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992), finding that a party's "continued possession" of information wrongfully disclosed constituted an ongoing injury, and that a court could effectuate at least a "partial" remedy by ordering documents – or, in that case, tapes – returned or destroyed. And we have followed *Church of Scientology* in cases just like this one, finding that disputes remained live on appeal even after the allegedly wrongful disclosure of employees' private information, *Reich v. Nat'l Eng'g & Contracting Co.*, 13 F.3d 93, 98 (4th Cir. 1993); or potentially privileged investment decisions, *Solis v. Food Emps' Labor Relations Ass'n*, 644 F.3d 221, 225 n.3 (4th Cir. 2011); or statements made "with an expectation of confidentiality," *United States v. Under Seal*, 853 F.3d 706, 723 (4th Cir. 2017). In each,

30

we recognized that our inability to order "the recipients of . . . disclosed documents to forget the information contained therein" did not mean we could order no effectual relief at all, *Under Seal*, 853 F.3d at 723, because we could still order documents "return[ed] or destroy[ed]," *Reich*, 13 F.3d at 98.

Just so here. As Stanko argues, the state's ongoing access to and ability to rely on his funding requests is a continuing injury, in that it may give the state a strategic advantage in any further litigation in this case. And even if we could not fully rectify an improper disclosure, we could provide partial but meaningful relief by ordering the funding requests resealed and the state's copies destroyed – and perhaps by ordering the state to refrain from relying on them in subsequent litigation against Stanko, *see In re Grand Jury Investigation*, 445 F.3d 266, 273 (3d Cir. 2006). Accordingly, Stanko's appeal from the district court's unsealing order is not moot.

3.

On the merits, however, we conclude that no relief is warranted because the district court did not abuse its discretion when it unsealed Stanko's funding requests and made them available to the state. *See Under Seal v. Under Seal*, 326 F.3d 479, 485 (4th Cir. 2003) (articulating abuse of discretion standard). As the court reasonably determined, Stanko put the contents of those filings at issue in his Rule 59(e) motion, arguing that the waiver issue should not have been decided without the results of the funded brain imaging and tests. Without access to the funding requests, the district court found, the state could not determine the purpose of the testing in question or its relevance to any of Stanko's arguments, making it "impossible" for the state to meaningfully respond. J.A. 7688. And

31

the court further found that unsealing the requests would deprive Stanko of no "tactical or strategic" advantage. *Id.*

Stanko makes much the same argument on appeal as he did before the district court, simply submitting that the content of his funding motions cannot be relevant because he is not challenging the actual disposition of those motions – which were, after all, granted. But that does not follow, for precisely the reason given by the district court: Stanko himself made the reasons for his funding requests relevant to his Rule 59(e) motion by tying the two together. Under the circumstances, we see no abuse of discretion here.

**B.**

That leaves the district court's denial of Stanko's Rule 59(e) motion. That motion, again, arose from the district court's earlier grant of Stanko's request for funding for brain imaging and expert analysis under § 3599(f), which permits such funding on a finding that it is "reasonably necessary" for a defendant's representation. 18 U.S.C. § 3599(f). In his Rule 59(e) motion, Stanko argued that the district court erred when it granted summary judgment against him without waiting for the results of those "necessary" tests, and he repeats that argument on appeal. We denied a certificate of appealability ("COA") on this issue, but Stanko insists he does not need one to go forward. We disagree.

Habeas petitioners must obtain a COA to appeal "final orders that dispose of the merits of a habeas corpus proceeding." *Harbison v. Bell*, 556 U.S. 180, 183 (2009); *see* 28 U.S.C. § 2253(c)(1)(A). Where it applies, the COA requirement is jurisdictional. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

32

It is true, as Stanko argues, that the COA requirement does not apply to all final orders; some orders, even if final, lack "a sufficient nexus" to the underlying merits of a habeas petition to "trigger the COA requirement." *United States v. McRae*, 793 F.3d 392, 399 (4th Cir. 2015). We have drawn a line between a *dismissal* of a motion for reconsideration as an unauthorized successive petition, which may be appealed without a COA, *id.* at 399-400, and a *denial* of a motion for reconsideration on its merits, which may not, *see Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004). Whereas a dismissal by definition does not pass on a habeas petition's merits, the same is not true of a denial: When a district court denies a reconsideration motion "on the merits, it necessarily considers the merits of the underlying habeas petition" because such a motion "alleges illegality in the conduct of" the habeas proceedings. *McRae*, 793 F.3d at 399.

Stanko's Rule 59(e) motion was denied by the district court, not dismissed. As in *Reid*, Stanko's motion alleged illegality in the conduct of the federal habeas proceedings – specifically, an error in granting summary judgment prematurely. And, as in *Reid*, the district court considered the merits of that claim in denying Stanko's motion: There was no need to wait for the testing at issue, it concluded, because the results would be inadmissible under the Supreme Court's then-recent decision in *Shinn*, barring a federal habeas court from considering new evidence, beyond the state court record, based on ineffective assistance of post-conviction counsel. J.A. 7847 (citing *Shinn*, 596 U.S. at 382). *Reid* therefore governs, and given the absence of a COA, we lack jurisdiction to review

this argument and must dismiss the portion of the appeal raising it. *See Miller-El*, 537 U.S. at 336; *Rowsey v. Lee*, 327 F.3d 335, 345 (4th Cir. 2003).[10]

## IV.

For the foregoing reasons, the judgment of the district court is affirmed and the appeal from the district court's denial of the Rule 59(e) motion is dismissed.[11]

*AFFIRMED IN PART AND DISMISSED IN PART*

---

[10] Even if we could consider this argument, it would not get Stanko far. In light of *Shinn*, 596 U.S. 366, which confirmed that any evidence from the sought-after testing would have been inadmissible, and *Shoop v. Twyford*, 596 U.S. 811, 820 (2022), which held that a court lacked authority to arrange for medical testing if *Shinn* would exclude the resulting evidence, the district court's decision to go forward with summary judgment in the absence of test results looks like a course correction, not an error.

[11] We note an outstanding motion from the state to strike a letter Stanko filed pursuant to Federal Rule of Appellate Procedure 28(j). We have not relied on any of the materials cited in the Rule 28(j) letter and accordingly dismiss the motion to strike as moot.